All of which was in violation of Section 1954 of Title 18 of the United States Code.

Brenda J. HOLLAR, Stedman Hodge, Charlotte L. Poole–Davis, and Clarice A. Bryan, Appellants,

v.

GOVERNMENT OF THE VIRGIN ISLANDS, Virgin Islands Bar Association and District Court of the Virgin Islands.

No. 87–3487.

United States Court of Appeals, Third Circuit.

Argued April 18, 1988.

Decided Sept. 12, 1988.

Brenda J. Hollar (argued), Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for appellants.

James S. Carroll, III (argued), Office of U.S. Atty., Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for appellee the District Court of the Virgin Islands.

Warren B. Cole (argued), Richard H. Hunter, Isherwood, Hunter and Colianni, Christiansted, St. Croix, U.S. Virgin Islands, for appellee the Virgin Islands Bar Assn.

Susan Rhodes (argued), Victor G. Schneider, Dept. of Justice, Government of the Virgin Islands, Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for appellee the Government of the Virgin Islands.

Before SEITZ, SLOVITER and BECKER, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

### I. FACTS AND JURISDICTION

In 1956, in response to a petition of the Virgin Islands Bar Association ("VIBA"), the District Court of the Virgin Islands ordered integration of the bar. Rule 51 of the District Court of the Virgin Islands provides in part that VIBA "shall be an integrated bar association [and] [n]o attorney may practice law in the Virgin Islands who is not an active or government member of the Virgin Islands Bar Associa-

tion...." V.I. Code Ann. tit. V App. V R. 51.

Appellants ("the Hollar group"), four members of the Virgin Islands bar, brought an action in the district court against the defendants, VIBA, the Government of the Virgin Islands ("Government"), and the District Court of the Virgin Islands ("District Court") (collectively "defendants"), asserting that the integrated status of VIBA and the increase in the licensing fees assessed by the government[1] violated the Hollar group's rights. In addition to complaints regarding the assessments of dues and increased license fees, the Hollar group asserted that VIBA has engaged in political and ultra vires activities and/or activities having no relation to a general welfare objective. These allegedly improper activities include: 1) taking positions on proposed Virgin Islands constitutions; 2) disregarding some of its by-law provisions, e.g., failing to appoint a nominating committee; and 3) using dues to pay for a pleasure cruise for selected members.

Following argument on cross-motions for summary judgment, the district court, through a specially assigned judge,[2] entered an order granting the defendants' motions as to all claims and denied plaintiffs' motion. 648 F.Supp. 170. This appeal by the Hollar group followed. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1982). All of the issues presented in this appeal are legal ones, and our review is plenary.

### II. DISCUSSION

The Hollar group asserts that the district court erred in holding that Rule 51 is constitutionally valid and otherwise enforceable. Specifically, that group argues that the integration of VIBA was improperly accomplished and that, in any event, it impermissibly infringes on the group's first

---

1. A $500.00/year licensing fee is assessed of each attorney. V.I. Code Ann. tit. 27 § 302 (Supp.1986). Two hundred dollars of that fee goes into a Law Library Fund; the remainder goes into the General Fund of the Treasury of the Virgin Islands. Government attorneys are exempted.

2. Plaintiffs, having requested that an outside judge be appointed, do not, of course, challenge

amendment rights.[3]

### A. *The Integration Order*

■ It is the position of the Hollar group that there are two fatal flaws in the district court order integrating the bar. It first asserts that Rule 51 is defective because it fails to articulate a welfare objective for the integration. The order of integration, however, stated that the court was "of the opinion that integration of the Bar [was] in the best interest of the Court and the Bar and the administration of justice in the Virgin Islands." Thus, even assuming that a welfare objective must be expressed when integrating a bar, Rule 51 is not defective when read in conjunction with the integration order, despite the generality of the language in the order. After all, the language, in the best interest of the administration of justice, is necessary to capture the breadth of permissible activities of a bar association.

■ Second, the Hollar group argues that integration of the bar requires some input by the legislature. It cites *Lathrop v. Donohue*, 367 U.S. 820, 81 S.Ct. 1826, 6

her right to rule on their claim against the District Court of the Virgin Islands.

3. The Revised Organic Act provides that "[n]o law shall be passed abridging the freedom of speech" and that the first amendment has the same force and effect in the Virgin Islands that it has in the United States and any state thereof. 48 U.S.C. § 1561 (1982).

4. The particularly pertinent by-laws state:
8. The standing committee shall be as follows, and shall perform the following functions:
(A) Legislation and Law Reform:
This committee shall consist of three members.
It shall be the duty of this committee to advocate, by proper and ethical means, the adoption or repeal of such legislation as may be recommended by the Board of Governors and the Bar.
It shall be the object of this committee to improve the administration of justice, and in attaining this object it shall be the duty of the committee to keep under continuing study the laws being enacted, the organization and administration of courts, methods of judicial selection, tenure and retirement and compensation of the judiciary, the system of practice and procedure in use, with due emphasis upon the correction of deficiencies; and to study and evaluate the trends and reforms in practice and procedure in

L.Ed.2d 1191 (1961) for this proposition. The group's reliance on *Lathrop* is misplaced. The district court correctly pointed out that the *Lathrop* Court did not hold that legislative input is *necessary*. Additionally, the district court noted that other courts have allowed judicial integration of the bar with no legislative input. *E.g., In re Unification of New Hampshire Bar*, 109 N.H. 260, 248 A.2d 709 (1968) (negative and inconclusive action by state legislature relating to bill to integrate bar did not affect power of court to order integration without legislative input). Given the judiciary's inherent power to regulate and supervise attorneys within its jurisdiction, we conclude that lack of legislative input does not render defective the integration of the bar by judicial action. Accordingly, we conclude that the order of integration and Rule 51 are not technically flawed.

### B. *Validity of the Integrated Bar*

Although the arguments advanced by the Hollar group leave much to be desired analytically, we are satisfied that its first argument amounts to a facial attack on the constitutionality of the order and by-laws [4]

other jurisdictions, in substantive law or procedure. This objective shall include all Federal and Territorial legislation, as well as Administrative rules or regulations of Federal or Territorial departments, agencies or offices.
(B) Legal Education and Admission to the Bar:
This committee shall consist of five members.
It shall be the duty of this committee to keep under continuing study the status of legal education and admission to the Virgin Islands Bar, to assist and cooperate with the Committee on Bar Examinations appointed by the Chief Judge of the District Court, to aid through appropriate channels in the raising of standards for general and legal study, and to evaluate the trends and reforms in other jurisdictions and to propose such changes as in their opinion will improve the standing of the Virgin Islands Bar.
It shall consider and report to the Board of Governors or the Bar on all matters relating to legal education and admission to the Bar. It shall examine proposals for changes in the rules of admission; changes in the bar examinations; enactment or amendment of legislation affecting legal education or admission to the Bar with authority to promote or oppose the same on behalf of the Bar, when in the judgment of the Board of Governors such action is advisable.
(C) Unauthorized Practice of Law:
This committee shall consist of three members.

It shall be the duty of this committee to keep under continuing study the subjects of any unauthorized practice of law; to study the prohibitions that exist in the Virgin Islands, as compared with the other territories and states; to prevent such unauthorized practice, and to make investigation of unauthorized practice. With the approval of the Board of Governors, this committee may take steps to prevent or to stop the unauthorized practice of law, including the initiation of legal proceedings.

The committee shall make a report to the Board of Governors within 45 days after a complaint has been received.

(D) Professional Ethics and Grievance Committee:

This committee shall consist of five members.

The Code of Professional Responsibility and Code of Judicial Conduct as adopted by the American Bar Association shall be the code of ethics for the Virgin Islands Bar.

This committee shall further:

(1) Formulate and recommend standards and methods for the effective enforcement of high standards of ethics and conduct in the practice of law as a profession; develop and recommend improved disciplinary tribunals or committees established by courts or other public authority; consider the Canons of Ethics of the legal profession and of the judicial officers and the observance thereof; and make recommendations for amendments to or clarifications of the Canons of Ethics when they may appear to be advisable.

(2) Upon request, advise or assist the Bar with respect to the professional conduct of lawyers and the ethics of the profession, make such investigations of professional conduct and abuses in connection with the practice of law as may be directed by the Board of Governors; furnish information and make recommendations on the foregoing subjects to the Board of Governors.

(3) The Professional Ethics and Grievance Committee of the Virgin Islands Bar shall have the power to investigate all charges of professional misconduct that may be brought to their attention in writing, or initiate such investigation on their own motion. When sufficient funds are available for the purpose, the Board of Governors shall have authority to appropriate necessary funds for such investigation. This committee shall have power to summon and examine witnesses, to order the production of books, records or other documentary evidence, and to administer oaths. Any refusal to comply with any proper order or direction of said committee shall be reported to the Chief Judge of the District Court for summary action thereon. Where the Grievance Committee finds the facts do not warrant disciplinary action the matter shall be closed and the accused attorney notified. Where the committee finds the facts to warrant disciplinary action it shall file a complaint in the District Court. The complaint shall set forth the specific facts constituting the alleged misconduct, and a copy thereof shall be served upon the accused attorney. The Board of Governors shall appoint an active member or members of the Bar to present the evidence of the charges to the Court. The style of all complaints shall be: THE VIRGIN ISLANDS BAR, Complainant, vs. _____ (the accused attorney), Respondent.

(4) Within forty-five (45) days after a complaint has been received the committee shall file a report with the Chief Judge and with the Board of Governors and shall file status reports every forty-five days thereafter until the matter has been closed.

(E) Public Relations and Entertainment:

This committee shall have three members. The objectives of this committee shall be:

(1) To impress upon the individual lawyer the importance of employing good public relations in his everyday practice;

(2) To correct the impression of the public that the misdeeds of a few lawyers are the rule rather than the exception. To correct this impression the committee should publicize commendable deeds of lawyers and worthy projects of the Virgin Islands Bar.

(3) To strengthen the procedures of self-discipline among lawyers.

(4) To inform the public on those aspects of the law which directly affect the individual and, more specifically, to show the individual how it affects him. The public should be educated as to the legal problems involved in everyday living and as to the advisability of consulting a lawyer before doing an act, rather than afterwards.

(5) The means for carrying the lawyers' story to the laymen as above, amongst others, are the following:

Press news stories, press releases, editorials, correction of misleading articles, magazine articles, speakers' bureaus and panels, radio and television, motion pictures, pamphlets, folders and mailings, institutional advertising contents and awards, meetings.

(6) There is a place for fun and song in the life of the Bar and activities in this field should be espoused to round out the activities of the Bar. This can be appropriately done in the entertainment of important outside guests or as a means of bringing our members and their wives together for social evenings.

(F) Judiciary Committee:

This committee shall consist of five members.

(1) The committee shall accept reports or complaints from the Bar or the public on the judges, conduct an investigation and make a report within forty-five (45) days to the Board of Governors with recommendation as to whether or not such report or complaint has any merit.

(2) Upon receipt of such a report, if the recommendation indicates the complaint or report has merit, the Board of Governors shall report to the membership at its next meeting, and shall execute the instructions of the Bar which may include, but shall not be limited to, a resolution to the judge affected or recommendation to the appointing power for removal.

which, together, create the integrated bar. It contends that the court-imposed requirement that the members pay dues to the Association as a condition to their practicing law violates, without more, their first amendment rights of freedom of speech and association. The VIBA responds that under the controlling constitutional test there is no basis in the court order or the by-laws for concluding that a facial violation of the first amendment appears.

■ Were we writing on the proverbial clean slate, we would doubtless be required, even at the facial attack stage, to strike the proper balance between the interest of the government in an integrated bar and the treasured speech and association rights created by the first amendment. But such is not this case.

In 1961, the Supreme Court decided *Lathrop v. Donohue*, 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191. As we read the various opinions in that case, seven justices, in effect, upheld the facial constitutional validity of the integrated state bar of Wisconsin against first amendment attack. The fact that those seven justices may have advanced various rationales in support of their conclusions does not diminish the precedential value of the case. Additionally, a comparison of the by-laws of the integrated bar involved in *Lathrop* (footnote 7 of plurality opinion) with those before us demonstrates a facial comparability. Indeed, some of the quoted by-laws of VIBA evidence an even closer connection with matters designed to further the public interest. In any event, the Hollar group does not raise a facial attack on any particular by-law. We therefore conclude that

the by-laws in the two cases are sufficiently similar that they cannot form a basis for distinguishing *Lathrop* in this facial attack. We must therefore decide whether *Lathrop* is the definitive response to the facial attack on the integrated bar.

In our judicial hierarchy it is not the province of this court to attack the soundness of the various rationales employed by the majority in *Lathrop*. If that case is still viable, we are obligated to apply it. The Hollar group appears to argue that later Supreme Court opinions have tacitly overruled *Lathrop*. However, it does not furnish us with any cases involving a facial attack that can be so read.[5] Nor do we feel free to say that the facial ruling in *Lathrop* has been nullified by indirection.

We therefore determine that we are bound by *Lathrop* to conclude that the documents creating the integrated bar in the Virgin Islands are not facially in violation of the freedom of speech and association rights of the Hollar group.

## C. *The Conduct and Activities of the Bar*

Our conclusion that the integrated bar withstands facial attack does not end our inquiry. The Hollar group further challenges some actions of VIBA as violating its first amendment rights. In addition, it asserts that such actions were ultra vires. An ultra vires act is one which is impermissible as beyond the power or capacity of the entity in question. 90 C.J.S. *Ultra Vires* (1955). Under established judicial principles, the ultra vires attack under Virgin Islands law[6] should be addressed be-

---

(3) It shall be the duty of the committee to conduct an intensive investigation of all judicial candidates and to submit such report (in form approved by the Board of Governors) to the appointive power with its recommendations. This report shall also be submitted to the Board of Governors.

(4) It shall also be the duty of the committee to conduct an ongoing evaluation annually of all judges in the Virgin Islands. The form of the evaluation is to be approved by the Board of Governors, and the results of such an evaluation shall be submitted by report to the Board of Governors, the Presiding Judge of the Territori-

al Court and the Chief Judge of the District Court.

5. *See, e.g., Gibson v. The Florida Bar*, 798 F.2d 1564 (11th Cir.1986) (relying, in part, on *Lathrop*). To the extent that *Levine v. Supreme Ct.*, 679 F.Supp. 1478 (W.D.Wis.1988), can be read as suggesting that later Supreme Court cases have overruled our reading of *Lathrop*, we disagree.

6. Section 4 of Title 1 of the Virgin Islands Code states that

The rules of the common law, as expressed in the restatements of the law approved by the

fore reaching, if needed, any constitutional attack on those actions. If the challenged acts are impermissible as ultra vires, then the constitutionality of those acts vis-a-vis the group need not be reached. *See International Assoc. of Machinists v. Street,* 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961) (Court faced constitutional issue reserved in *Railways Employes' Dept. v. Hanson,* 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956); Court avoided constitutional issue by ruling that expenditure of compulsory union dues for political issues violated the act authorizing union-shop agreements).

We begin, therefore, by examining the Hollar group's claims regarding the allegedly impermissible activities to determine whether they are ultra vires. The district court noted that four activities, discussed hereafter, were "consistent with the mission of the VIBA as described in the enabling order and the rules and bylaws associated with it." We interpret this as a finding that the activities were not ultra vires.

In reviewing the correctness of the district court's ultra vires determination, we must bear in mind the basic object of a bar association. That assuredly is the promotion of a just legal system, which is facilitated by collective rather than separate efforts by members of the bar. When there is ambiguity in the by-laws as to whether a specific act is authorized, we conclude that the Virgin Islands common law requires that we decide whether the act is reasonably in furtherance of the objects of the association. 6 Am.Jur.2d *Associations and Clubs* § 11 (1963). With these principles in mind, we address the four specific claims decided by the district court and appealed to this court.

■ First, the district court rejected the group's claim that a document issued by the VIBA discussing a labor dispute was ultra vires. The document was little more than an exhortation that the parties resolve their differences in a peaceful and lawful

manner. Given its contents, we think that the document was well within the authorization of the by-laws. *See* By-law IX.8.(E) (discussing dissemination of information about aspects of law affecting public).

■ Second, the district court dismissed the group's claim that it was ultra vires for VIBA to take positions on pending legislation. It is undisputed that VIBA disseminated opinions regarding pending legislation. Indeed, By-law IX.8.(A) contemplates analysis of pending and existing legislation and the taking of positions thereon. But we think the authority granted in the by-laws must be construed in light of the object of such an association. Thus, it is to be expected that a bar association would use its collective expertise in the law to evaluate the workings of the legal system, and to advocate appropriate legislation in areas that may reasonably be in furtherance of the association's mission. We think it would exceed the by-law authority to take positions on matters not reasonably related to such objectives.

■ Normally, we would proceed to apply the rule of construction to the position taken by the VIBA on particular legislation to determine whether it was fairly within the authority granted by the by-laws. However, we are stymied by the fact that neither the district court opinion nor the briefs on appeal, with a few exceptions, particularize the releases that are attacked. Furthermore, in the few matters identified, such as the adoption of constitutions, we are not clear, to a certainty, whether the association took a position on subject matter not within the by-law, reasonably construed.

We therefore conclude that this claim should be remanded to the district court to permit particularized consideration and determination of the matters covered by this claim to determine whether they are fairly authorized by the by-laws or are ultra

American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of

decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

vires.[7]

■ Third, the district court rejected the Hollar group's claim that VIBA-sponsored social events were ultra vires. The authority to sponsor such events is found in the by-laws. *See* By-law IX.8.(E)(6). Thus, the district court correctly determined that these acts were not ultra vires.

■ Finally, the Hollar group challenged VIBA's taking a public position regarding a potential United States attorney. We do not find any specific authorization in the by-laws for taking a position on a candidate for such a position. Nor do we think it an action reasonably related to the objectives of the association, particularly given the political overtones of such an action. We therefore conclude, contrary to the district court, that this action was ultra vires under a fair reading of the present by-laws.

We are next called upon to decide the constitutionality of those activities that the district court and we have found to be authorized. In addressing the Hollar group's first amendment claims, we note that the Supreme Court has recognized the similarity between compelled support of a union and mandatory membership in a bar association. *See Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 232 n. 29, 97 S.Ct. 1782, 1798 n. 29, 52 L.Ed.2d 261 (1977). Accordingly, we look to the Court's union shop and agency shop cases for principles to inform our decision in the instant case.

In *Railways Employees' Dept. v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956), the Court held that "the requirement for financial support of the collective bargaining agency by all who receive the benefits of its work ... does not violate ... the First ... Amendmen[t]." *Id.* at 238, 76 S.Ct. at 721. The court noted that there was no record evidence to suggest that objectors' money was spent for purposes not germane to collective bargaining, a circumstance that would present "a different problem." *Id.* at 235, 76 S.Ct. at 720.

In a first amendment context, the Court in *Abood* held that where compelled financial support of a group is permissible, an individual cannot withdraw his support from acts promoting "the cause which justified bringing the group together." *Abood,* 431 U.S. at 224, 97 S.Ct. at 1794.

■ Thus, the first amendment jurisprudence of the Court's union and agency shop cases leads us to conclude that an integrated bar association can, even over dissent, constitutionally spend funds and express opinions to advance causes germane to the purpose underlying its integration, i.e., the furtherance of the administration of justice. *See, e.g., Abood,* 431 U.S. at 235–36, 97 S.Ct. at 1799–1800. The contours of this admittedly general formulation will become apparent only by its application to concrete facts.

■ We turn first to the group's claim that VIBA's statement regarding the labor action impermissibly infringed on the Hollar group's first amendment rights. Given the content of that statement we are satisfied that its publication was reasonably consistent with the purpose underlying the integration of the bar, and not, therefore, an impermissible invasion of the group's free speech and association rights.

■ We are also called on to determine whether compelled support of the social events of VIBA impermissibly infringed on the Hollar group's constitutional rights. Social events of a bar association improve relations among the members of the bar. Although such congeniality is not the main purpose for integrating a bar, it is sufficiently related to the administration of justice to permit some limitations on first amendment rights. *See Ellis v. Brotherhood of Ry., Airline & S.S. Clerks,* 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984). Accordingly, on this record, we conclude that the events attacked by the group did not exceed constitutional bounds.

■ The only issue remaining for us to decide with regard to VIBA's operation

---

7. Whether the constitutionality of such matters need be reached will depend on the outcome of the ultra vires issues.

involves the Hollar group's allegations of many other improprieties by the VIBA. The complaint stated, inter alia, that dues were used "essentially for impermissible and non-state related activities." The district court declined to rule on these allegedly ultra vires acts, finding that the complaint did not adequately raise such claims.[8] We think that the complaint, coupled with the summary judgment record, can be read to raise such claims and that any doubt regarding the sufficiency of the pleading should be clarified by amendment on remand.

Accordingly, we will remand the Hollar group's remaining claims regarding ultra vires activity to the district court. The district court, after conducting appropriate proceedings, can then decide whether the activities in question are beyond the authority granted VIBA in the integration order, Rule 51 and VIBA's bylaws. If unauthorized, appropriate relief can be granted without more. If not ultra vires, the question of whether those activities violate the group's pertinent first amendment rights must then be decided.

### D. *The Licensing Fee*

The Hollar group asserts that the district court erred by granting summary judgment to the Government on its claim that the assessment of a licensing fee against private attorneys, pursuant to sections 302 *et seq.* of title 27 of the Virgin Islands Code, was not constitutionally permissible. It argues that 1) the increase in the fee was confiscatory, i.e., a due process violation; 2) the fee constitutes a "double tax"; and 3) the increase in the fee was an equal protection violation.

■ In response to the Hollar group's contention that the increase was arbitrary, the district court held that the Hollar group had failed to demonstrate that the fee increase was irrational. The district court's holding was informed by the presumption that tax laws are constitutional. *Lehnhau-*

*sen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364, 93 S.Ct. 1001, 1006, 35 L.Ed. 2d 351 (1973) (citing *Madden v. Kentucky,* 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940)).

The district court found the group's claim of double taxation meritless, noting that the Hollar group had offered no support for the proposition that a government is precluded from imposing a license fee on those who are also compelled to pay dues to a bar association.

■ With respect to the equal protection claim, the district court noted that license fees had been increased substantially for other professions and found that attorneys had not been "singled out" for a fee increase.

The Hollar group also contends that the license fee is discriminatory because it is *not* assessed against government attorneys. V.I. Code Ann. tit. 27 § 306 (1982). The district court found that the exemption of government attorneys was rationally related to the government's interest in attracting a competent staff.

We conclude that the reasoning and analysis of the district court fully supported its conclusion that the license fee is not invalid. The dismissal of the claim against the Government of the Virgin Islands was, therefore, proper.

### E. *Due Process*

■ Finally, the Hollar group argues that the district court deprived it of due process because inadequate procedures were in place for challenging the constitutionality of VIBA's integrated status and operation in connection with suspension proceedings arising out of a failure to pay association dues. Given the fact that any suspended attorney has free access to the courts to mount an attack on such action, we are not persuaded that the group's contention in these circumstances rise to the level of a due process violation. Thus,

---

**8.** In its second opinion, the district court declined to "delve into the minutae [sic] of the VIBA practices." In so doing, the district court noted that complaints regarding the operation

of VIBA were better left to the officers and membership of VIBA and, if necessary, to the courts.

**172**

assuming that the district court was a proper defendant, its dismissal was warranted.

### III.  CONCLUSION

In light of the foregoing, we will affirm the order of the district court granting judgment to the Government of the Virgin Islands and to the District Court of the Virgin Islands.  We will affirm the order of the district court granting judgment to VIBA with respect to the following claims: 1) the Hollar group's objection to the statement issued by VIBA in connection with a labor action and 2) the group's challenge to VIBA's social events.

We will reverse the order with respect to the following claim: the Hollar group's challenge to the ultra vires nature of the endorsement of a candidate for United States attorney.  The relief to be granted will be a matter for the district court to determine.

We will vacate the order of the district court to the extent that it precludes the Hollar Group from developing its attack on the association's taking a position on proposed legislation and constitutional initiatives as well as other claims of ultra vires or unconstitutional activity and remand such matters for further proceedings consistent with this opinion.

Each party shall bear its own costs.