970 F.2d 1260
 61 USLW 2111, 15 Employee Benefits Cas. 2002
 Jeffrey WILLIAMS, Appellant,
v.
NEW CASTLE COUNTY, New Castle County Government, Dennis
Greenhouse, Rita Justice, State of Delaware Department of
Insurance, David N. Levinson, Blue Cross & Blue Shield of
Delaware, Inc., State of Delaware.
 No. 91-3899.
 United States Court of Appeals,
Third Circuit.
 Argued June 18, 1992.
Decided July 24, 1992.
 
 Sylvia E. Hall, Kathleen M. Smith (argued), John J. Sullivan, Jr., Daniel J. Collins, Law Offices of Sylvia E. Hall, Pennsville, N.J., for appellant.
 Julie M.S. Seitz (argued), Christopher F. Baum, Asst. County Attys., New Castle County Law Dept., Wilmington, Del., for appellee.
 Before GREENBERG and NYGAARD, Circuit Judges, and POLLAK, District Judge*
 OPINION OF THE COURT
 GREENBERG, Circuit Judge.
 
 
 1
 Appellant, Jeffrey Williams, appeals from an order of the district court of November 14, 1991, granting appellee New Castle County's motion for summary judgment. The core of Williams' complaint concerned the county's alleged failure to comply with the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), Pub.L. No. 99-272, 100 Stat. 82 (1986), which requires both governmental and private employers to notify group health plan beneficiaries who have lost coverage in certain circumstances of their limited right to elect continued coverage. Williams had been covered under his former wife's health benefits plan provided by New Castle County, her employer. He contends that, after they were divorced, he was removed from coverage without notification of the cancellation or of his rights under COBRA. Thereafter, Williams suffered a heart attack and, when the insurer refused to cover his hospital bills, he initiated this action.
 
 
 2
 The district court found that Williams' only federal allegations were under the COBRA amendments to the Employee Retirement Income Security Act ("ERISA"), and it held that ERISA specifically exempts government plans, such as the county's, from its requirements. The court therefore granted summary judgment with respect to the ERISA claims, and declined to exercise its jurisdiction over Williams' pendent state law claims. Because we find that Williams also asserted claims under COBRA's amendments to the Public Health Service Act ("PHSA"), we will reverse the order of November 14, 1991, and remand for further proceedings.
 
 I. BACKGROUND
 
 3
 Williams was married to Katherine Williams while she was employed by the government of New Castle County. During the marriage, Williams was covered as a beneficiary under the health benefits insurance coverage with Blue Cross and Blue Shield of Delaware which Katherine Williams received through her employment with the county. The Williamses resided at 33 Dawes Drive, Newark, Delaware, until they separated in 1987, when Katherine Williams moved out of that premises. She has since remarried. Williams claims that he has maintained his permanent residence at 33 Dawes Drive from 1977 until the present.
 
 
 4
 The Williamses were divorced on June 13, 1988. Katherine Williams consequently requested that the county remove Williams from her health benefits coverage. On July 11, 1988, the county allegedly sent a letter to Williams by regular mail to his parents' address, at 8 Azalea Road, Meadowood, Newark, Delaware, informing him to notify it within 60 days if he wanted to continue his health benefits coverage retroactively to July 1, 1988. At Williams' option, the coverage could have been continued for up to 36 months.[1] The county contends that the letter was sent to Williams' parents' address at Katherine Williams' direction, as she believed that Williams was no longer going to reside at the former marital home. Williams contends that he never received the notification letter. It is undisputed that Williams failed to accept the option, and the coverage therefore lapsed as of June 30, 1988.
 
 
 5
 In September 1988, Williams suffered the heart attack which caused him to incur $33,000 in medical expenses, none of which has been paid. Williams submitted the bills to Blue Cross and Blue Shield of Delaware for payment through the county's health benefits plan, but they were returned unpaid because the coverage had lapsed. Williams contends that this was the first time that he was made aware that his coverage had been terminated.
 
 
 6
 During the following year, Williams and his parents made numerous telephone calls to various federal and state agencies, including the original defendants in this case, seeking an explanation as to why the coverage had lapsed and why he had not received notice of this. Williams claims to have had little cooperation or assistance. However, the Delaware Department of Insurance advised Williams that, although it did not have jurisdiction to reinstate his insurance coverage, Williams might have a private cause of action against the county under COBRA's amendments to ERISA.
 
 
 7
 On July 2, 1990, Williams brought suit in the United States District Court for the District of Delaware against the county, the State of Delaware, Dennis Greenhouse, Rita Justice, the Delaware Department of Insurance, David N. Levinson, and Blue Cross and Blue Shield of Delaware. The individual defendants were county and state officials. Williams has voluntarily dismissed this action against all the defendants other than the county. The complaint alleged that jurisdiction was founded upon COBRA, ERISA, 42 U.S.C. § 1985, 28 U.S.C. §§ 1331 and 1343(a)(1), and significantly, for our purposes, upon "42 U.S.C., Section 300bb-7," a section of the COBRA amendments to the PHSA. Although the complaint listed eight separate causes of action, Williams eventually dismissed count three, alleging conspiracy, and count eight, alleging intentional infliction of emotional distress.
 
 
 8
 The first count alleged that the county had failed to give proper notification of the impending cancellation of Williams' insurance coverage and his eligibility to elect continued coverage, in violation of "rights guaranteed to Plaintiff under the Consolidated Omnibus Budget Reconciliation Act of 1986 as codified in Title 29 U.S.C. Sections 1161 to 1168." These code sections are found within ERISA. On this count, Williams requested that the court enter a declaratory judgment that the county's conduct was violative "of the Consolidated Omnibus Budget Reconciliation Act of 1986." Williams also sought an injunction against "any and all practices [by the county] shown to be in violation of applicable law," compensation for all insurance benefits he would have received but for the county's conduct, punitive damages, and costs and attorney's fees pursuant to 29 U.S.C. § 1132(g), another ERISA section. In the second count, Williams claimed that the county breached its fiduciary duty by violating the standard of care set out in ERISA, 29 U.S.C. § 1104.
 
 
 9
 The fourth and fifth counts contained state law claims. The fourth alleged that the county made false representations of the effective status of his insurance coverage on which Williams relied to his detriment. The fifth asserted that the county negligently and willfully prevented Williams from obtaining timely insurance coverage renewal with the intent to ruin Williams' credit rating.
 
 
 10
 The sixth count contained a general claim that the county failed to perform its duties under municipal, state, and federal law. In particular, Williams alleged that:
 
 
 11
 Accordingly, when [the county, its] agents, representatives and employees conspired and denied Plaintiff health insurance coverage, [it] violated the public policy of the State of Delaware and the Statutes of the United States specifically Title XXII Section 2201A.
 
 
 12
 This count additionally alleged that the county "had a duty to ensure proper enforcement of all COBRA statutes." The seventh count dealt with an alleged violation of the Delaware Uniform Commercial Code.
 
 
 13
 After a pretrial conference in September 1991, the county requested and was granted leave to file a motion for summary judgment. The county argued that ERISA did not apply to governmental plans and that Williams was not entitled to relief. In response, Williams filed a brief which clarified his legal position by maintaining that his COBRA claims had always encompassed a claim under COBRA's amendments to the PHSA.
 
 
 14
 Although Williams made an elaborate argument in his brief in the district court that COBRA's ERISA amendments could apply to his government health plan, alternatively he argued that COBRA also mandates that states and political subdivisions such as the county must follow the notification procedures outlined in COBRA's amendments to the PHSA, 42 U.S.C. § 300bb-1, et seq. He asserted that 42 U.S.C. § 300bb-7, a PHSA section, entitled him to bring an action for appropriate equitable relief. However, in light of the fact that the COBRA amendments to the PHSA, which cover government health benefits plans, do not specify the nature of the equitable relief available, and because COBRA's amendments to ERISA regarding private employers are essentially identical to the PHSA amendments, Williams argued that he could bring an ERISA action for breach of fiduciary duty and recover attorneys fees as allowed by ERISA. In addition, Williams contended that there was a genuine issue of material fact precluding summary judgment because of a dispute regarding delivery of the county's notification letter.
 
 
 15
 In granting the county's motion, the district court preliminarily concluded that "[Williams'] only possible federal claims against New Castle County are predicated on the ERISA notification requirements." It then determined that, because Section 1003(b)(1) of ERISA, 29 U.S.C. § 1003(b)(1), exempts government plans from ERISA's benefit plan requirements, no cause of action existed against the county. The court then declined to exercise its jurisdiction over Williams' state law claims, dismissing them as "independent and unrelated to the dismissed federal claim."II. DISCUSSION
 
 A. Standard of Review
 
 16
 A district court must grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On an appeal from a grant of summary judgment, we must review the facts on record in a light most favorable to the nonmoving party, in order to determine whether a genuine issue of material fact remains for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). We exercise plenary review over the district court's statutory construction and interpretation of legal precepts. See Chrysler Credit Corp. v. First Nat'l Bank & Trust Co., 746 F.2d 200, 202 (3d Cir.1984); Dent v. Cunningham, 786 F.2d 173, 175 (3d Cir.1986).
 
 B. Statutory Framework
 
 17
 Congress enacted COBRA in 1986 to address the growing budget deficit facing the United States. In support of the larger revenue-related scheme, COBRA sought to provide for temporary private health insurance continuation coverage through amendments to ERISA and the PHSA.[2] These amendments were motivated by Congress' concern with the "reports of the growing number of Americans without any health insurance coverage and the decreasing willingness of our Nation's hospitals to provide care to those who cannot afford to pay." H.R.Rep. No. 99-241, Part I, 99th Cong., 2d Sess. 44, reprinted in 1986 U.S.C.C.A.N. 42,622.
 
 
 18
 COBRA amended both ERISA and the PHSA by adding essentially identical continuation coverage and notification provisions. See 29 U.S.C. §§ 1161 to 68 (ERISA); 42 U.S.C. §§ 300bb-1 to 8 (PHSA). ERISA, however, exempts any "government plan" from its employee benefit plan provisions. 29 U.S.C. § 1003(b)(1). A government plan for ERISA purposes is defined as a plan "established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32). COBRA's amendments to the PHSA therefore partly fill this gap by providing similar protection to beneficiaries losing coverage under a plan maintained by "any State that receives funds under this chapter, by any political subdivision of such a State, or by any agency or instrumentality of such a State or political subdivision."[3] 42 U.S.C. § 300bb-1.
 
 
 19
 Section 300bb-1(a) of the PHSA, which is a virtual mirror image of the coordinating ERISA section, states that each group health plan must provide continuation coverage for each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event, provided he or she elects continuation coverage within the election period. A qualifying event includes, inter alia, the divorce or legal separation of the covered employee from the employee's spouse, 42 U.S.C. § 300bb-3, and a qualified beneficiary includes a spouse of the covered employee who is a beneficiary under the plan on the day before the qualifying event. 42 U.S.C. § 300bb-8(3)(A)(i).
 
 
 20
 Under Section 300bb-2, the continued coverage must extend for at least 18 months after the date of the qualifying event, with certain exceptions not relevant here. The period during which the beneficiary may elect to continue coverage is prescribed in Section 300bb-5, which states:
 
 
 21
 (1) Election Period
 
 
 22
 The term 'election period' means the period which--
 
 
 23
 (A) begins not later than the date on which coverage terminated under the plan by reason of a qualifying event,
 
 
 24
 (B) is of at least 60 days' duration, and
 
 
 25
 (C) ends not earlier than 60 days after the later of--
 
 
 26
 (i) the date described in subparagraph (A), or
 
 
 27
 (ii) in the case of any qualified beneficiary who receives notice under section 300bb-6(4) of this title, the date of such notice.
 
 
 28
 42 U.S.C. § 300bb-5.
 
 
 29
 Lastly, and at issue in this case, Section 300bb-6 details the notification procedure. The covered employee must notify the plan administrator of the qualifying event within a specified period of time, and the plan administrator must then notify, in the case of the qualifying event involved in this case, "any qualified beneficiary with respect to such event" of such beneficiary's rights under the COBRA amendments. 42 U.S.C. § 300bb-6(1) to (4). The notification required from the plan administrator must be given to the beneficiary within 14 days of the date that the administrator was notified of the qualifying event. 42 U.S.C. § 300bb-6.
 
 
 30
 According to an October 1985 COBRA Congressional Conference Committee report, the conferees intended that the Secretary of Labor would issue regulations defining adequate notice, and the Secretary of Health and Human Services would issue conforming regulations. H.R.Rep. No. 453, 99th Cong., 1st Sess. 563. While it appears that such regulations have not been issued, the conferees noted that, pending their promulgation, "employers are required to operate in good faith compliance with a reasonable interpretation" of the substantive rules and notice requirements. Id. The committee went on to point out that they "intend that notice by mail to the qualified beneficiary's last known address is to be adequate; however, mere posting is not to be adequate." Id.
 
 
 31
 While COBRA added essentially identical provisions for continuation of coverage under ERISA and the PHSA, the COBRA amendments to ERISA and the PHSA are dissimilar in one fundamental way; while PHSA's Section 300bb-7 provides only that an aggrieved individual may bring "an action for appropriate equitable relief," plaintiffs attempting to recover for a violation of COBRA's ERISA amendments may probably seek the broader relief available under the ERISA framework.
 
 C. Our Disposition
 
 32
 Although Williams now concedes that ERISA does not govern the administration of the county's health benefits plan, he continues to argue that ERISA Section 1104, which details certain fiduciary obligations, should apply in the absence of any specific description of the remedies available to the PHSA plaintiff under PHSA Section 300bb-7. See 29 U.S.C. § 1104. It is clear, however, that under 29 U.S.C. § 1003(b)(1), none of the ERISA provisions applies to a government employee benefits plan. We therefore agree with the district court's rejection of Williams' ERISA arguments.
 
 
 33
 We conclude, however, that the district court erred when it determined that Williams' "only possible federal claims" were predicated on COBRA's ERISA amendments. The complaint and, more clearly, the brief in opposition to the motion for summary judgment, raised the issue of the county's liability under COBRA's amendments to the PHSA, and the court simply failed to address this theory of recovery.
 
 
 34
 Our situation here is analogous to one in which we are asked to review a dismissal for failure to state a claim upon which relief may be granted. Under the simplified and flexible pleading requirements in the Federal Rules of Civil Procedure, a complaint must provide a defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). The complaint's allegations are to be construed favorably to the pleader, and "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46, 78 S.Ct. at 102; Sharpe v. Philadelphia Housing Authority, 693 F.2d 24, 27-28 (3d Cir.1982) (case remanded in part after dismissal because complaint, though not a "model of clarity," could "conceivably support recovery"). See also Frazier v. Southeastern Pennsylvania Transportation Authority, 785 F.2d 65, 66-67 (3d Cir.1986) (federal rules permit "great generality" in stating the basis of plaintiff's claim).
 
 
 35
 Williams' complaint, while not well-drafted, satisfies these liberal requirements. It repeatedly raised the issue of whether the county had complied with "COBRA," and Williams argues that the violation of COBRA's amendments to the PHSA falls within those allegations. Williams also points out that he did cite to 42 U.S.C. § 300bb-7, that section of the PHSA which permits private causes of action, in his allegation of jurisdiction.
 
 
 36
 Furthermore, in count six of the complaint, which the district court construed as containing only state law claims, Williams contended that the county and others had violated the policies set forth in the "Statutes of the United States specifically Title XXII, Section 2201A." Although it should have been more precisely articulated, this is obviously a reference to Title XXII, Section 2201(a) of the PHSA, otherwise referred to as 42 U.S.C. § 300bb-1(a). The PHSA, as we have already discussed, provides that health benefits plans administered by qualifying state subdivisions must notify beneficiaries of their limited right to elect continued coverage once that coverage has been terminated. The references to COBRA and to the PHSA in the complaint convince us that the pleading contained a theory of recovery under those acts. The facts alleged and noted by the district court, together with the requirements of COBRA's amendments to the PHSA, present a viable claim which should have been confronted by the court in its ruling on the summary judgment motion. If there were any question about this, Williams' brief in opposition to the motion for summary judgment certainly made it clear that he was urging that the county violated the PHSA's notification requirements.[4]
 
 
 37
 In the circumstances, we are constrained to conclude that the district court erred when it did not consider Williams' argument based on the PHSA. See Hollar v. Government of Virgin Islands, 857 F.2d 163, 171 (3d Cir.1988). Thus, the county was not entitled to summary judgment, at least on the basis on which it was granted. We therefore conclude that further proceedings are required in the district court so that Williams' claim may be considered on the merits.
 
 III. CONCLUSION
 
 38
 We cannot close this opinion without making an observation regarding the procedure Williams, through his attorneys, has chosen to pursue in this case, for we have serious doubts as to whether this appeal was necessary. We think that the district court's memorandum opinion made it evident that it considered that Williams had asserted federal claims solely under ERISA, and at that point Williams should have made a motion for reconsideration under Fed.R.Civ.P. 59 to clarify his position. While we cannot be certain as to how the district court would have ruled on such a motion, it might well have granted it, thereby obviating the need for this appeal. Of course, we are not suggesting that Williams was required to make a motion for reconsideration as a jurisdictional prerequisite to the appeal, and thus we are deciding the case on the merits though he did not make such a motion. In view of the aforesaid, we will reverse the order of November 14, 1991, granting the county summary judgment, will vacate the order dismissing the pendent state law claims, and will remand the matter to the district court for further proceedings consistent with this opinion. The parties will bear their own costs on this appeal.
 
 
 
 *
 Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 In circumstances not germane to this opinion, the coverage could have been terminated earlier
 
 
 [2]
 COBRA also amended the Internal Revenue Code to deny any employer a business tax deduction for a group health plan failing to include the specified insurance continuation options. 26 U.S.C. §§ 106, 162. While this amendment clearly was intended to encourage employers to provide for temporary private health insurance continuation, we are not concerned with it on this appeal
 
 
 [3]
 While the record does not establish that Delaware receives such funds, at oral argument before us in response to our inquiry, the county did not urge that Delaware did not receive the funds. If there is a dispute over this issue, it may be explored on remand
 
 
 [4]
 We are not to be understood as implying that a contention in a brief may substitute for an allegation in a complaint, for clearly it may not. However, in light of our liberal pleading requirements, a brief may help explain a legal theory advanced in the complaint, particularly where the complaint is somewhat unclear