**ALAN D. SMITH, KATHLEEN MACKAY, ADAM G. CHRISTIAN and BARBARA WEATHERLY, and DE VOS & CO., and VIRGIN ISLANDS BAR ASSOCIATION, Intervenors**

**v.**

**CLEMENT MAGRAS, individually and in his capacity as COMMISSIONER OF THE DEPARTMENT OF LICENSING AND CONSUMER AFFAIRS, Respondent**

Civil No. 167/1993

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

December 17, 1993

DENISE FRANCOIS, ESQ. (HODGE & FRANCOIS), St. Thomas, V.I., *for petitioners*

HENRY E. THOMAS, ESQ. (Assistant Attorney General, Department of Justice), St. Thomas, V.I., *for respondent*

PHILLIP L. HUSBAND, ESQ. (DE VOS & CO.), St. Thomas, V.I., *for intervenor De Vos & Co.*

SHARON EICHENAUER, ESQ., Crus Bay, St. John, *for intervenor V.I. Bar Association*

EDWARD A. WASCOE, ESQ., St. Thomas, V.I., *for Intervenor V.I. Bar Association*

MEYERS, *Judge*

## MEMORANDUM OPINION

Petitioners Alan D. Smith, Kathleen Mackay, Adam G. Christian and Barbara Weatherly instituted this action to challenge the actions threatened by Respondent Clement Magras, individually and in his capacity as Commissioner of the Department of Licensing and Consumer Affairs (DLCA), if Petitioners failed to pay licensing fees which Magras and DLCA contend are due. Petitioners also requested relief in the nature of mandamus, preliminary and permanent injunctive relief and a temporary restraining order. This court, pending the outcome of a hearing on the issues, granted Petitioners' motion for a temporary restraining order and temporarily enjoined Respondent from imposing the threatened sanctions including, but not limited to, publication of Petitioners' names in newspapers of general circulation as persons who have willfully failed to obtain business licenses.

De Vos & Co., a professional corporation engaged in the practice of law, and the Virgin Islands Bar Association (VIBA) have been granted leave to intervene in this matter.

The matter was heard before the court on March 10, 1993. At the hearing, Respondent moved to dismiss the petition. For the following reasons, the court holds that 27 V.I.C. Section 302 does not require attorneys who are salaried employees and who have no ownership interest in the firms for which they work to obtain individual licenses from DLCA in order to practice law.

Respondent's motion to dismiss will therefore be denied, and Petitioners are granted the relief sought.

## FACTS

Petitioners are all members in good standing of the Virgin Islands Bar Association. All of them are employed as attorneys at one of two law firms, Law Offices of Hodge & Francois or Paul Hoffman, P.C. Each partner of Hodge & Francois and the sole shareholder, officer and director of Paul Hoffman, P.C. have licenses issued by DLCA. None of the Petitioners is licensed by DLCA.

In September 1992, Respondent initiated action, by issuing letters, seeking compliance with the licensing provisions of Chapter

9, Title 27 of the Virgin Islands Code, entitled "Licensing of Businesses and Occupations." Specifically at issue is 27 V.I.C. 302 which provides for the annual licensing of ". . . all persons and associations engaged in the designated businesses, occupations, professions and trades in the Virgin Islands of the United States." 27 V.I.C. 302(a). This statute includes over 300 categories requiring DLCA licenses.

The Commissioner issued letters to several members of VIBA stating that each attorney admitted to practice law in the Virgin Islands is required to obtain a license from the DLCA. The letters, dated September 29, 1992, informed the attorneys that their license applications would be retroactive for the period they were practicing without licenses and that fees and penalties would be calculated accordingly. Commissioner Magras stated that if the attorneys failed to comply within ten (10) days of receipt of the letter "further action including notice to the V.I. Bar and Territorial and District Courts" would be taken. (Petitioners' Exhibit 1).

Petitioners' attorney responded to the Commissioner's letter, requesting the legal authority upon which the Commissioner relied. Each Petitioner also requested a hearing on the matter. Commissioner Magras forwarded to Petitioners' attorney a copy of a 1984 letter from the Attorney General at that time, J'Ada Finch-Sheen, Esq., to the Director of the Consumer Service Administration,[1] which detailed her analysis of the licensing provisions. Attorney General Finch-Sheen opined that all attorneys, other than those employed by the Government of the Virgin Islands, are required to obtain an annual DLCA license because the "license to do business as a lawyer is personal to the attorney and not to the profession." (Petitioners' Exhibit 3). Petitioners again requested hearings on the matter.

Petitioners subsequently received identical letters from Commissioner Magras dated February 8, 1993, but postmarked February 19, 1993. In his correspondence, Commissioner Magras stated that because Petitioners had not yet complied with his earlier demand, he presumed their noncompliance was willful. Accordingly, the Commissioner quoted the penalties and enforcement provisions governing "willful, defiant, contumacious and obstreperous con-

---

[1] The Consumer Services Administration was the predecessor of the Department of Licensing and Consumer Affairs.

duct." (Petitioners' Exhibit 5). The Commissioner further declared that unless Petitioners complied "within the next ten (10) days" he would cause to be published a "list of delinquent licensees" in the Virgin Islands Daily News and St. Croix Avis, both newspapers of general circulation. In addition, if Petitioners failed to comply within forty-eight (48) hours of the aforementioned publication, Commissioner Magras stated that he would forward that list to the attorney General's office for prosecution. (Petitioners' Exhibit 5).

Petitioners filed this action requesting relief in the nature of mandamus, preliminary and permanent injunctive relief and a temporary restraining order. This court granted Petitioners' motion for a temporary restraining order, and temporarily enjoined Respondent from imposing the sanctions threatened, including, but not limited to, publication of Petitioners' names in newspapers of general circulation as persons who have willfully failed to obtain business licenses.

## DISCUSSION

Petitioners initially complain that although hearings were requested on more than one occasion, the Commissioner never granted them. As the Respondent conceded at the March 10, 1993 hearing, Petitioners were clearly entitled to a hearing before any sanctions were imposed, including publication of a list of those who do not hold DLCA licenses and imposition of penalties and fines. The DLCA'S enabling statute at 3 V.I.C. Section 272(b)(4) reads as follows:

(b) Powers. The Department shall have the following powers:

(4) *upon previous notice and an opportunity for a fair hearing,* impose administrative fines for violations of the rules, regulations and orders approved or prescribed by the Department. Such fines shall not be less than $25 nor more than $1,000." (Emphasis added).

In addition, the subchapter concerning licenses provides for notice and an opportunity for a hearing before the director may revoke, suspend or refuse to issue a license. 27 V.I.C. 304(a).[2] The statute

---

[2] 27 V.I.C. 304

(a) The Commissioner, after notice and hearing, may refuse to issue, or may

14

also provides for review by the Territorial Court of any order of the Commissioner, which review may be petitioned for by any person adversely affected by such order. 27 V.I.C. 304(i).[3]

Although Commissioner Magras expressly conceded that hearings were required before the imposition of sanctions, Respondent's memorandum in support of its motion to dismiss maintains that DLCA is authorized, pursuant to 3 V.I.C. 272(e), to publish the names of those violating the licensing law. That statute reads in pertinent part:

> "Publicity; fraudulent or deceitful practices. The Department may, when it deems it appropriate on behalf of the consumer, inform the public through available means of any

---

revoke or suspend a license for any one or any combination of the following causes:

(1) Where fraud or deceit has been perpetrated in the application.

(2) Where the Commissioner finds that because of the moral character or previous conduct of the applicant or licensee, relevant to the conduct of the business or occupation for which the license is sought or has been granted, such applicant or licensee is not a suitable or fit person and the denial, revocation or suspension of the license is accordingly necessary to protect the public welfare, health, morals or safety.

(3) Where the licensee allows, permits or suffers on the licensed place or business any improper or wrongful behavior of a substantial character and of public concern.

(4) Where the licensee has violated or breached any term or condition of the license as established under the provisions of subsection (b), Section 303 of this Chapter.

(5) Where the Commissioner finds that the applicant or licensee has willfully claimed an exemption from any excise tax, gross receipts tax or customs duty, knowing such claim to be false.

(6) Where the licensee has failed to comply with Section 303b of this Chapter.

[3] 27 V.I.C. 304

(i) Any person adversely affected by any order of the Commissioner may obtain a review thereof by filing a written petition for review with the Territorial Court within 30 days after the entry of said order. The petition shall state the grounds upon which review is asked and shall pray that the order of the Commissioner be modified or set aside in whole or in part. A copy of such petition shall be forthwith served upon the Commissioner and within 15 days the Commissioner shall certify and file in the court a transcript of the record upon which the order complained of was entered. A copy of such transcript shall also be furnished at the time of such filing to the appellant. Upon such review the findings of the Commissioner, if supported by substantial evidence, shall be conclusive.

illegal, fraudulent and deceitful practices committed in the goods and services market."

Respondent contends that because Petitioners are not licensed by DLCA, they are engaging in "an unlawful and deceptive practice" by continuing to practice law. (Respondent's Memorandum in Support of Motion to Dismiss, p. 6). Respondent asserts that DLCA is the only entity empowered to decide what the appropriate publicity is for such activity.

Petitioners at no point ignored or disregarded DLCA's letters or position regarding the law. On the contrary, Petitioners, through their attorney, asked for clarification of DLCA's position and for a hearing on the matter since they openly contested DLCA's interpretation of the relevant statutes. Petitioners were forthright about their position and clearly requested that DLCA follow the procedure set forth in the statute, i.e, grant them a hearing during which they could argue the merits of their position. None of these actions can be characterized as illegal, fraudulent or deceitful practices. Petitioners were merely attempting to resolve a valid legal dispute regarding the licensing statute.

Respondent further asserts that such publication would warn the consumer who "reasonably assumes that a person who is offering services to the public for which they must pay, is properly licensed pursuant to local laws." (Respondent's Memorandum in Support of Motion to Dismiss, pp. 6–7). However, Petitioners, as employee-attorneys, are not offering their services to the public, but to their employers. The two firms for which Petitioners work do offer services to the public, and their principals are licensed by DLCA.

■ Since hearings are required before DLCA may impose sanctions, it follows that the Commissioner may not unilaterally decide that those attorneys not possessing a license are engaged in illegal, fraudulent or deceitful practices, and thereafter impose the sanction of publicly listing their names. The purpose of the required hearing is to provide safeguards which prohibit such arbitrary and capricious action by the Commissioner.

Commissioner Magras relies in part on a September 1984 letter from Attorney General Finch-Sheen to the Director of Consumer Service Administration as the basis for DLCA's position that every attorney, except those employed by the Government of the Virgin Islands, is required to obtain a license. (See Petitioners' Exhibit 3).

16

The Attorney General differentiated between an attorney's professional license pursuant to 4 V.I.C. 441, and a license to privately practice law pursuant to 27 V.I.C. 302. By "professional licensing" the Attorney General referred to those attorneys licensed to practice law in the Virgin Islands by the District Court of the Virgin Islands, attorneys admitted to practice for limited purposes (a member of another jurisdiction's bar who is employed by the U.S. government, the Virgin Islands government or other government sponsored legal services), and attorneys practicing pro hac vice by court order.

Attorney General Finch-Sheen also stated that all attorneys must be licensed pursuant to 27 V.I.C. 302. Because prior to 1983 the statute "only listed professions or trades which were personal to the practitioner," the Attorney General opined that "[t]he fair implication is that the license to do business as a lawyer is personal to the attorney and not to the profession." Therefore, law firms were not required to hold separate business licenses apart from those held by each member.

Petitioners, however, cite a later memorandum of law filed in 1985 by Attorney General Finch-Sheen in Hollar v. Government of the Virgin Islands, 857 F.2d 163 (3rd Cir. 1988) in support of its contention that employee-attorneys do not require individual licenses. In that memorandum, the Attorney General's office refers to 27 V.I.C. 302 licenses as business licenses required of those "engaged in the *business* of providing legal representation," and notes that licensing fees are to be paid to the Consumer Services Administration, "an agency established to regulate the business community." (Emphasis in original). In an analysis of 27 V.I.C. 306,[4] which includes a blanket exclusion for the V.I. and U.S. Governments, the Attorney General explained that because government attorneys are "merely employees" who are "not engaged in any "business for profit" and whose "salaries are predetermined and do not vary with the attorney's case load or success rate," they fall under the blanket exclusion and are exempt from the licensing requirements.

---

[4] 27 V.I.C. 306

   The provisions of this Chapter shall not apply to agencies of the Virgin Islands or of the United States Government, to religious, charitable, benevolent, or educational organizations when not engaged in the conduct of business for profit, or to transactions involving a charitable or benevolent purpose.

The memorandum from the Attorney General's office to the District Court in Hollar evidences a clear departure from Attorney General Finch-Sheen's 1984 opinion as stated in the letter upon which Commissioner Magras relies. The court also notes that the aforementioned 1984 correspondence is merely an advisory letter from the Attorney General to a government agency and not a written opinion. Pursuant to 3 V.I.C. 114(a)(7) and (8), the Attorney General may furnish legal advice to any executive branch, officer, board, department, commissioner or agency, but may issue written opinions on legal questions only upon the request of the Governor or Legislature.

Petitioners are clearly similarly situated to the exempted government attorneys as they are merely employees of their respective law firms who receive predetermined salaries which are not dependent on the size of their case loads or their success rates. It follows, therefore, that if government attorneys are exempted on the basis of their employee status, private practice salaried employee attorneys would also be spared the license requirements for the same reasons, i.e., they are merely employees who are not in the business of practicing law for profit.

Respondent also contends that the plain meaning of the statute in question dictates that all attorneys be individually licensed by DLCA by virtue of the fact that the statute speaks to licensing of all businesses, professions, occupations and trades. Commissioner Magras asserts that attorneys are clearly professionals and, as such, each is required to be licensed pursuant to the language which speaks to professions irrespective of his or her status as an employee. Respondent argues that the only exemptions available are for attorneys employed by the United States and Virgin Islands governments, or religious or non-profit organizations. 27 V.I.C. 306.

Petitioners further contend that the plain meaning of the statute evidences an intent to only license businesses. Petitioners argue that to follow Respondent's interpretation requiring each attorney who wishes to engage in his or her profession to have a separate license, leads to the inference that each individual who wishes to engage in his or her trade or occupation must also be licensed. Read in conjunction with subsection (b), which is the catch-all licensing provision for all businesses, occupations, trades and professions not listed in the eight and one-half pages of subsection

18

(a),[5] Respondent's position would dictate that each and every individual employed in the Virgin Islands be required to obtain a DLCA license except those falling under the government employee exemption of 27 V.I.C. 306. Every employed person works at his trade, occupation or profession whether he or she is an attorney, an auto mechanic or a salesclerk. Surely, the legislature did not intend to have every single non-government employee licensed by DLCA.

This court has found no pertinent legislative history regarding the licensing statute—merely a statement from Senator Hugo Dennis that the 27 V.I.C. 302(a) list was developed and taken "almost verbatim from the Director of Consumer Services." (15th Legislature of the Virgin Islands, Transcript of Regular Session—October 25, 1983). Respondent cites the deposition of Ms. Helen Joseph, the Director of the Consumer Services Administration from June 1979 to May 1984, which was filed in Hollar, supra. Ms. Joseph stated that all attorneys, even those who are employees, must be licensed because they are professionals. Ms. Joseph further stated that travel agents, for example, are not required to be licensed, unless they possess an ownership interest in the business for which they work, because they are not professionals, but merely employees. These statements cannot be reconciled. If we are to be guided by Respondent's interpretation of the statute, it follows that all travel agents should be licensed whether or not they are considered professionals, because surely they are working at their trade or occupation.

Furthermore, by virtue of some of the entries listed in 27 V.I.C. 302(a), the statute cannot be read literally. Included in the extensive list are "billiard table—per table," "miscellaneous amusement devices," and "pinball and similar machines." It is fair to say that none of the aforementioned listings falls under the heading of business, profession, occupation or trade.

In interpreting the statute at issue, the court must give effect to every clause and word of the statute if possible. Department of Labor v. Davidson, 25 V.I. 109 (Terr.Ct. 1990). "The cardinal rule of statutory construction is to save not destroy." Id., at p. 112 (quoting

---

[5] 27 V.I.C. 302

    (b) Any person or association engaged in a business, occupation, profession or trade not covered by any other provision of this Code shall obtain an annual license at the fee of $100.00.

Zenith Radio Corp. v. Matushita Elect. Indus. Co., Ltd., 402 F. Supp. 244 (E.D. Pa 1975) and U.S. v. Menasche, 348 U.S. 528 (1955)).

The licensing statute speaks of licensing those engaged in or conducting a business, occupation, profession or trade. See 27 V.I.C. 301. The statute does not specifically require that individuals be licensed. Rather the statute, in order to avoid the absurd result that all persons employed in the Virgin Islands, except those covered by the blanket exclusion found at 27 V.I.C. 306, obtain a DLCA license, must be read as a statute requiring a license of those who engage in or conduct the businesses to which the trades, occupations and professions are connected.

DLCA's application for a license pursuant to 27 V.I.C. 302 bolsters this analysis. It is entitled "Application for United States Business License." (Petitioners' Exhibit 9). The instructions accompanying the application include the requirement that "your trade name, corporation, or limited partnership documents" be registered with the Lieutenant Governor's office. Ten of the listings, real estate brokers and salesmen, construction contractor, electricians, plumbers, barbers, beauticians, manicurists, accountants and draftsmen, require that the applicant take and pass an examination prior to applying to DLCA for a license (Petitioners' Exhibit 9). The application asks for the name of the business, location of the business, number of employees, annual volume of sales, and whether the applicant has complied with the workmen's compensation, unemployment compensation and government insurance fund laws. In addition, the application requires information regarding corporate officers and their character references. Item No. 6 is headed "Type or Organization" and lists as choices sole proprietorship, corporation, partnership, joint venture and other. The category of employee is not a choice. The required tax clearance forms are also designed for businesses. DLCA's license application on its face appears to be designed for business licenses rather than individual licenses.

Respondent points to Hollar, supra, for the proposition that the licensing fees as applied to attorneys for the privilege of engaging in their profession are valid. In that case, however, the court was not faced with the issues presented in this action. The Hollar court held that to require membership in the integrated bar with its required fee in addition to the DLCA licensing fee was not unconstitutional and did not constitute double taxation. Hollar, at p. 171.

Petitioners further contend that Commissioner Magras' interpretation of the licensing statute is in conflict with 4 V.I.C. 441(a) which provides that:

> "The district court has jurisdiction over the admission of attorneys at law to paractice in the courts of the Territory and over the discipline of of persons so admitted and may make rules and regulations governing the practice of law in the Territory."[6]

Respondent contends that 4 V.I.C. 441(a) does not give the District Court exclusive jurisdiction over the admission and discipline of attorneys, and therefore DLCA, pursuant to 3 V.I.C. 271, shares such jurisdiction.

The court finds no merit in Respondent's argument. The DLCA's primary function is to issue licenses and maintain standards for the protection of the consumer. See 3 V.I.C. 271. DLCA may issue licenses except where, by law, such power is granted to another entity. 3 V.I.C. 272(14). The Revised Organic Act of 1954, Section 21 et seq. recognizes the judicial branch of government, and that branch has, by law, been granted jurisdiction over the admission and discipline of attorneys. The judicial branch is also empowered to make rules and regulations governing the practice of law locally. 4 V.I.C. 441(a).

## CONCLUSION

The logical conclusion, therefore, is that all rules, regulations, and requirements for an individual to practice law in the Virgin Islands must come from the court and not from DLCA. However, pursuant to 27 V.I.C. 302, DLCA may properly require that law firms offering their services to the public obtain the standard business license. The DLCA is in no way empowered to interfere with or obstruct any individual attorney's practice of law. Therefore, Re-

---

[6] The 1984 Amendments to the Revised Organic Act of 1954 divested the District Court of its jurisdiction over the admission of attorneys to the local bar and the discipline of admitted attorneys, and placed said jurisdiction in the Territorial Court. In the Matter of the Application of Jeffrey B.C. Moorhead, Esquire, for Readmission to the Bar of the Virgin Islands (Integrated), Terr.Ct. 1992 (Misc. No. 17-1991). Notably, neither the District Court nor the Territorial Court has ever imposed as a condition to the practice of law in the Virgin Islands that each attorney be licensed by DLCA. See Rules 301, 302, and 303, Territorial Court Rules.

21

spondent's Motion to Dismiss will be denied, and Petitioners will be granted the relief requested.

## ORDER

In accordance with the Memorandum Opinion of even date, it is hereby

ORDERED that Respondent's Motion to Dismiss is hereby DENIED; and it is further

ORDERED that Respondent is permanently enjoined from imposing the licensing requirements of 27 V.I.C. 302 on individual employee attorneys; and it is further

ORDERED that Respondent is permanently enjoined from imposing sanctions pursuant to 3 V.I.C. 272 and 27 V.I.C. 304 in the absence of prior notice and an opportunity for a fair hearing.