

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-14-1997

# Smith v. Magras

Precedential or Non-Precedential:

Docket 96-7660

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Smith v. Magras" (1997). *1997 Decisions.* Paper 191.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/191

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

iled August 14, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 96-7660

ALAN D. SMITH; KATHLEEN MACKAY;
ADAM G. CHRISTIAN; BARBARA WEATHERLY;
APPELLEES
DE VOS & CO.; VIRGIN ISLANDS BAR ASSOCIATION

v.

CLEMENT MAGRAS, INDIVIDUALLY AND IN HIS
CAPACITY AS COMM. OF DEPT. OF LICENSING AND
CONSUMER AFFAIRS

CLEMENT MAGRAS & *GOVERNMENT OF THE
VIRGIN ISLANDS
APPELLANTS

*(pursuant to Rule 12(a) F.R.A.P.)

On Appeal From the United States District Court
of the Virgin Islands
Division of St. Thomas
(D.C. Civ. No. 94-cv-00012)

Argued: April 8, 1997

Before: BECKER, ROTH and WEIS,
Circuit Judges.

(Filed August 14, 1997)

JULIO A. BRADY, ESQUIRE
Attorney General

PAUL L. GIMENEZ, ESQUIRE
Solicitor General

FREDERICK HANDLEMAN,
 ESQUIRE (ARGUED)
Assistant Attorney General
Virgin Islands Department of Justice
48B-50C Kronprindsens Gade
GERS Building, Second Floor
St. Thomas, U.S. Virgin Islands
 00802

Attorneys for Appellants

DENISE FRANCOIS, ESQUIRE
  (ARGUED)
ADAM G. CHRISTIAN, ESQUIRE
Hodge and Francois
1340 Taarneberg
Charlotte Amalie, St. Thomas
U.S. Virgin Islands 00802

Attorneys for Appellees

**OPINION OF THE COURT**

BECKER, Circuit Judge.

The Virgin Islands legislature has enacted a business licensing scheme pursuant to which every person "wishing to engage in any business, occupation, profession or trade" listed in the statute is required to obtain a license and pay an annual license fee. V.I. Code. Ann. tit. 27, § 301(a) (1997). One of the listings is "Attorney," for which the annual fee is $500. See id. § 302. The question presented in this appeal is whether the license fee must be paid by attorneys whose sole practice (and income) is as law firm employees. The obligation of law firm partners and of sole

2

practitioners to obtain a license and pay the fee is unquestioned.

The plaintiffs are four attorneys who are members of the Virgin Islands Bar, a law firm, and the Virgin Islands Bar Association (collectively, "the plaintiffs"). In September 1992, defendant Clement Magras, Commissioner of the Virgin Islands Department of Licensing and Consumer Affairs ("Commissioner"), informed the plaintiffs that they were required to obtain a business license from his department in order to practice law in the Virgin Islands. After some correspondence which failed to resolve the matter, the plaintiffs brought suit in the Territorial Court of the Virgin Islands. That court issued an injunction against collection of the fees; the Appellate Division of the District Court of the Virgin Islands affirmed. The Territorial and District Courts concluded that, under the statutory scheme, the obligation to obtain a license runs only to the partners of the firm for which the non-owner attorneys work. The appellate panel grounded this interpretation on its reading of the statutory language; on the Commissioner's historical interpretation of the statute, to which it apparently gave some deference; and on its belief that application of the licensing provisions to non-owner attorneys might, in view of the sanctions available to the Commissioner for non-payment of the license fees, somehow trench upon the power of the courts to regulate the practice of law.

Finding the statutory language quite clear and susceptible to no interpretation other than that all attorneys, whether or not employed by others, are subject to the license requirement and fee, we reverse. We therefore need not reach the administrative interpretation issue. We also summarily reject the plaintiffs' argument that the application of the licensing scheme to all attorneys would violate the Equal Protection Clause. Further, given the concession by the Commissioner that he would not employ his power under the licensing scheme to interfere with the judiciary's role in regulating the professional conduct and competence of attorneys, and given the absence of any pending or threatened action that might involve such interference, we have little difficulty with the contention

3

that the licensing scheme infringes the power of the courts to regulate the bar. In the course of discussing the power of the courts to regulate the bar, we hold, for the first time, that the principle of separation of powers applies to the coordinate branches of the Virgin Islands government.

I. THE LICENSING STATUTE

Consideration of the contentions of the parties requires that we set forth the relevant text of §§ 301 and 302. It is as follows:

§ 301. Licenses required; application forms; qualifications and limitations

 (a) Every person or association wishing to engage in any business, occupation, profession, or trade listed in section 302 of this chapter, as a condition precedent to engaging in any such business, occupation, profession, or trade, shall apply in writing to and obtain from the Commissioner of Licensing and Consumer Affairs (referred to as the "Commissioner" in the remainder of this chapter) a license to engage in or to conduct such business, occupation, profession or trade.

 (b) Applications for licenses under this chapter shall be made on forms prescribed and furnished by the Commissioner. As part of or in connection with any application the applicant shall furnish information concerning his identify, personal history, experience, business record, purposes, record of any conviction of any offense which is a felony or crime involving moral turpitude in the jurisdiction where the offense occurred, and any other pertinent facts that the Commissioner may reasonably require.

 In the case of corporations or partnerships the preceding requirements shall be applicable to all of the shareholders or partners. . . .

 (c) If the applicant is a partnership or a corporation, the application shall designate each member, officer, or employee who will exercise the powers to be conferred by the license upon such partnership or corporation. The Commissioner may require any such member,

4

officer or employee to furnish him with the information required of applicants under subsection (b) of this section.

. . . .

§ 302. Same; business, occupations, professions and trades covered; fees

 (a) The following annual license fees are made applicable to and shall be levied upon all persons and associations engaged in the designated businesses, occupations, professions and trades in the Virgin Islands of the United States:

. . .

Attorney [$] 500

. . . .

We will refer to these provisions throughout our discussion. We also attach the schedule contained in § 302 as an appendix.

II. PROCEDURAL HISTORY; THE APPELLATE PANEL OPINION

In September 1992, the Commissioner issued letters to the plaintiffs informing them that they were required to obtain business licenses pursuant to the Virgin Islands licensing statute. The plaintiffs responded that, as employees of law firms whose partners or shareholders were properly licensed, there was no requirement that they be licensed individually. The plaintiffs requested a hearing. More correspondence followed, culminating in the Commissioner's threats to publish the names of the plaintiffs not in compliance with the licensing statute and to refer the matter for possible criminal prosecution.

The plaintiffs brought suit in the Territorial Court of the Virgin Islands. The Territorial Court issued a permanent injunction enjoining the Commissioner from collecting license fees from non-owner attorneys who work at law firms. The Commissioner appealed.

In affirming the order of the Territorial Court, the Appellate Division of the District Court proceeded from a rendering of the statute that highlighted certain words and phrases. In § 301(a), the appellate panel underscored "[e]very person or association." In § 301(b), it stressed the provision that "[i]n the case of corporations or partnerships the preceding requirements shall be applicable to all of the shareholders or partners." And, in § 301(c), it highlighted the following sentence:

If the applicant is a partnership or a corporation, the application shall designate each member, officer, or employee who will exercise the powers to be conferred by the license upon the partnership or corporation.

(emphasis added by Appellate Division).

The panel then stated:

The only reasonable, logical and consistent inference we draw from the highlighted words is that the license is to be granted to the partnership or corporation itself, not to "each member, officer or employee who will exercise the powers of the license."

The panel then turned to the interpretation given the statute by the administrative agency charged with its enforcement. The panel looked to the form distributed by the Commissioner to all license applicants, which, inter alia, requests the applicant to check off:

"TYPE OF ORGANIZATION" it is: a sole proprietorship, reflecting the word "person" used in subsections 301(a) & (b) and 302(a); or a corporation, a partnership, a joint venture, reflecting the word "association" in those same subsections.

In the Appellate Division's view:

The only mention of employee is the application's request for the total estimated number of employees; it does not require the applicant to identify these employees by listing their names and/or positions. None of the remaining requirements on the application form have any relevance to the question whether separate license fees can be taxed to attorney-employees of private law firms.

6

The court also noted that, prior to Commissioner Magras's September 1992 letters, the Commission had not required an attorney to apply for and pay for a separate business license unless the attorney had an ownership interest in the law partnership or corporation that employed him or her. It also pointed out that, although "Travel Ticket Agent" is listed as an occupation required to obtain a license, the department does not require a travel agent working as an employee of a travel agency to pay a separate license fee. The court analogized the non-owner attorney in a law firm to an employee of a travel agency and concluded that the two should be treated similarly. The court opined that a non-owner attorney in a law firm is not conducting business. Rather, the court reasoned, a non-owner attorney is working on behalf of the firm, which is conducting business.

Finally, the court cautioned that the provisions of the licensing scheme allowing the Commissioner to base licensing decisions on the moral character or misconduct of the licensee violated the principle of separation of powers. Because such provisions effectively regulated attorneys in the Virgin Islands, the court reasoned, they impermissibly allowed the Commissioner, at least potentially, to operate in areas under the exclusive control of the judiciary.

The plaintiffs' arguments before us have essentially tracked the appellate division's position. In addition, they contend that applying the licensing scheme to non-owner attorneys would deny such attorneys equal protection of the laws. That is so, they submit, because these attorneys would be required to pay the licensing fee while other, allegedly similarly situated employees would not be so required.

The Commissioner appeals from the order of the appellate division. The Commissioner argues that the plain language can be interpreted only to mean that the licensing requirements apply to all attorneys, and, in the alternative, that any ambiguity in the statute should be resolved in favor of the agency charged with its interpretation, which, in this case, determined that the statute applies to all attorneys. The Territorial Court had original jurisdiction pursuant to V.I. Code Ann. tit. 4, § 76(a) (Supp. 1994). The

Appellate Division had jurisdiction over the appeal from the Territorial Court pursuant to V.I. Code Ann. tit. 4, § 33 (Supp. 1994). We have jurisdiction over the appeal of the final order of the appellate division pursuant to 48 U.S.C. § 1613a(c).

We review the grant of a permanent injunction for abuse of discretion. See International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW v. Mack Trucks, Inc., 820 F.2d 91, 94-95 (3d Cir. 1987). "An abuse of discretion exists where the district court's decision rests upon a clearly erroneousfinding of fact, an errant conclusion of law, or an improper application of law to fact." Id. at 95. Statutory construction is a legal question, over which we exercise plenary review. See Air Courier Conference of America/Int'l Comm. v. United States Postal Serv., 959 F.2d 1213, 1217 & n.3 (3d Cir. 1992). Therefore, in the context of the present appeal, if, after our plenary review, we conclude that the Territorial Court erred as a matter of law in interpreting the licensing statute, we may say that it did not act within its discretion in issuing the permanent injunction.

III. DISCUSSION

A. Professional Licensing Schemes in General

Licensing schemes similar to that at issue here are not uncommon. More often than not, these schemes, by their very terms, apply to attorneys. Their form varies: some operate statewide, others are local enactments; some merely generate revenue by way of fees, others include regulatory provisions that govern conduct. Not surprisingly, there is a substantial body of state law governing such arrangements. See David B. Sweet, Annotation, Validity of State or Municipal Tax or License Fee Upon Occupation of Practicing Law, 50 A.L.R. 4th 467 (1986); 9 Beth A. Buday & Julie Rozwadowski, McQuillin, The Law of Municipal Corporations §§ 26.128, 26.130 (3d ed. 1995). Often, attorneys subject to these schemes will challenge them on numerous grounds, basing their challenges on federal and state constitutional or statutory law. Although we have

8

undertaken no systematic study, our research indicates that, for the most part, these arrangements are largely unobjectionable and are ordinarily approved by state courts.

Without attempting our own synthesis of the case law, we offer some representative examples of cases addressing such schemes. In Sterling v. City of Philadelphia, 106 A.2d 793 (Pa. 1954), an oft-cited case, the Supreme Court of Pennsylvania upheld a city ordinance that established a mercantile tax that applied to attorneys. In so doing, the court reasoned that a pure revenue-raising measure does not infringe on the power of the state courts to regulate attorneys because such a measure does not affect the rights and duties of an attorney in carrying out his profession. See id. at 796-98. It stated further that "the privilege of practicing law carries with it no exemption from the duties of citizenship, including the sharing with all others the expense of government, national, state and municipal." Id. at 796. Courts reaching a similar conclusion include Kradolfer v. Smith, 805 P.2d 1266 (Mont. 1990), Mire v. City of Lake Charles, 540 So.2d 950 (La. 1989), Gleason v. City Council of Augusta, 251 S.E.2d 536 (Ga. 1979), and Lublin v. Brown, 362 A.2d 769 (Conn. 1975).

Courts have taken a different view of measures that include regulatory provisions placing conditions on the practice of law. For example, in Sexton v. City of Jonesboro, 481 S.E.2d 818 (Ga. 1997), the Supreme Court of Georgia invalidated a municipal ordinance that required, as a precondition to engaging in the practice of law, the payment of a fee. Although it recognized the right of local governments to tax attorneys, the court held that this particular measure was regulatory and therefore infringed on the exclusive power of the courts to regulate attorneys. See id. at 820. At least one court has even invalidated a measure that was non-regulatory and only revenue-raising. In Sharood v. Hatfield, 210 N.W.2d 275 (Minn. 1973), the Supreme Court of Minnesota held that a statute that diverted registration fees collected statewide from attorneys to general treasury funds improperly infringed on the constitutionally provided, exclusive power of the courts to regulate attorneys. See id. at 279-82.

9

Sexton and Sharood notwithstanding, it is the rare case in which licensing schemes are found infirm. See generally, Sweet, supra §§ 11-13. On the contrary, such schemes are routinely upheld, even in the face of challenges based on state constitutional law.

B. Plain Language

We begin our analysis by examining the relevant language of the Virgin Islands statute. The general standard for statutory interpretation is well known and not in dispute here. The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Robinson v. Shell Oil Co., ___ U.S. ___, 117 S. Ct. 843, 846 (1997). If so, our inquiry is at an end. See id. Of course, interpretation of a statute involves the examination of the statute as a whole. See id. In that sense, we must endeavor to give each word of the statute operative effect. See Walters v. Metropolitan Educ. Enters., ___ U.S. ___, 117 S. Ct. 661, 664 (1997). In other words, "[s]tatutory construction `is a holistic endeavor.' " United States Nat'l Bank of Or. v. Independent Ins. Agents, ___ U.S. ___, 113 S. Ct. 2173, 2182 (1993) (quoting United Savings Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371 (1988)).

In our view, the language of the statute in dispute is entirely plain. Section 301 requires "[e]very person or association wishing to engage in any business, occupation, profession, or trade listed in section 302" to obtain a license to do so. V.I. Code Ann. tit. 27, § 301(a) (1997) (emphasis added). Section 302 states that the license fee requirement is "made applicable to and shall be levied upon all persons and associations engaged in the designated businesses, occupations, professions and trades." Id. § 302 (emphasis added). "Attorney" is listed in § 302. See id. Therefore, the plain language of the statute unambiguously states that every individual who wishes to practice as an attorney must obtain a license.1 We believe the case to be that simple.

_____

1. The statute exempts attorneys who work for the government. See V.I. Code Ann. tit. 27, § 306 (1997). We have earlier held that the exemption is valid and does not violate the principle of equal protection. See Hollar v. Government of the Virgin Islands, 857 F.2d 163, 171 (3d Cir. 1988).

10

We also note that the statute distinguishes between instances in which an underline entity is potentially subject to a license and those in which individuals, including employees, are potentially subject to a license (depending on whether the entity or individual is "engaged in" the listed activity). For example, because "[b]aby sitting service" is listed in § 302 as an entity, i.e., the relevant licensee is the "service" as an entity, only the service itself, and not the employees of the service, would be subject to the licensing requirement. By contrast, because "[a]ttorney" is listed in § 302 as an individual, each individual attorney is subject to the licensing requirement, whether he or she is an employee or not. In certain circumstances, the statute also requires a license of both the entity and the employees. For example, § 302 requires a license of a "[b]arber shop" and of each "[b]arber," "[b]arber apprentice," and "[b]arber temporary." In short, the distinctions that the Virgin Islands legislature drew in § 302 strongly suggest that the legislature intended to require licenses of entities in some instances, of employees of entities in others, and of both entities and employees in still others.[2] By employing the term "[a]ttorney," the legislature appears to have intended to license attorneys as individuals.

The plaintiffs only response to the foregoing is to argue that this interpretation cannot be reconciled with the language of other provisions of the licensing statute. In particular, they submit that these other provisions (highlighted supra at part I) make it clear that in corporate or partnership settings, only the corporation or partnership, and not the employees, need obtain a license. Because non-owner attorneys in a law firm are mere employees, the plaintiffs reason that these other provisions exempt non-owner attorneys from the licensing requirements. We disagree.

The plaintiffs point first to the second paragraph of § 301(b), which governs the information a corporation or

_____

2. It is unclear whether the Commissioner has enforced the licensing statute against all the employees who may be subject to its requirements. At all events, a claim of impermissible selective enforcement has not been raised and we do not reach that issue.

11

partnership must submit with an application for a license. Under that paragraph, when a corporation or partnership applies for a license, "all of the shareholders or partners" must submit certain information along with the corporation's or partnership's application. Id. § 301(b). Because § 301(b) only requires information from "shareholders or partners," the plaintiffs submit that non-shareholders and non-partners are exempt from the licensing requirements altogether. The plaintiffs read too much into this provision. The second paragraph of § 301(b) governs, by its very terms, only the application of corporations or partnerships. It does not govern individual applications at all.

We note that requiring non-shareholders and non-partners to submit information along with the corporation or partnership for whom they work would make little sense. Such individuals have no de jure say in the governance of the applicant corporation or partnership, so the licensing body should have no interest in non-shareholders or non-partners when determining whether to license a corporation or partnership qua corporation or partnership. Excluding non-shareholders and non-partners from the requirements of the second paragraph of § 301(b), then, is merely a recognition of the internal structures of corporations and partnerships. That exclusion says nothing about whether a non-shareholder or a non-partner need make his own application for a license.

The plaintiffs, however, read § 301(c) as bolstering their argument as to the second paragraph of § 301(b). Section 301(c) requires that a corporation or partnership "designate each member, officer, or employee who will exercise the powers to be conferred by the license upon such partnership or corporation." Id. § 301(c). Each designee may then be required to submit certain information along with the application of the corporation or partnership. See id. The plaintiffs contend that this language does not mean that the designated "member, officer, or employee" is subject to the licensing requirements. That may be so, but the argument does not "advance the ball" in this case. Nothing in § 301(c) states that "each member, officer, or employee" is not subject to the licensing requirements.

12

Moreover, like the second paragraph of § 301(b), § 301(c) only applies to applications of corporations or partnerships; it says nothing about applications of individual persons. And, again like the second paragraph of § 301(b), § 301(c) is merely a recognition of governance in corporations or partnerships. A designated "member, officer, or employee," by § 301(c)'s definition, will be exercising power within the corporation or partnership. Therefore, the licensing body may have some interest in that "member, officer, or employee" when considering whether to license the corporation or partnership. In short, the fact that the licensing body may require § 301(c) designees to submit certain information is simply inconclusive as to whether those designees, or any other individual, are subject to the licensing requirements.3

_____

3. The plaintiffs also argue that our interpretation would render § 303(a) meaningless in certain circumstances. Section 303(a) requires that the licensing body forward applications for licenses to agencies in the Government of the Virgin Islands charged with historic preservation and environmental protection so that those agencies can examine the application for "construction and site acceptability." Id. § 303(a). Because it would make little sense to review the applications of non-owner attorneys with respect to "construction and site acceptability," the plaintiffs reason that non-owner attorneys are not subject to the licensing requirements. To the extent that this argument has any force, and we think it does not, it seems totally immaterial for it proves too much. By their reasoning, the licensing requirements would not apply to the numerous persons or associations, listed in§ 302, who would not necessarily construct a building nor even need a building in which to operate their business, engage in their occupation, practice their profession, or carry out their trade. If the plaintiffs are correct in their argument about § 303(a), then the licensing requirements would apply to none of these businesses, occupations, professions, or trades. Section 303(a) does not exempt a person or association from the licensing requirements simply because he, she, or it is not concerned with the construction or siting of a building.

The plaintiffs further argue that § 303b(a) supports their position. Section 303b(a) requires that "[a]ny entity licensed pursuant to this chapter shall notify the Employment Security Agency, Virgin Islands Department of Labor, of its intent to fill an existing position, now vacant or soon to become vacant, or a new previously unfilled position." Id. § 303b(a). Because non-owner attorneys are in no position to hire

13

The plaintiffs further claim that our reading of the statute would produce, as they describe it, the absurd result that every individual employee in every venture in the Virgin Islands would be subject to the licensing requirements. We believe the plaintiffs incorrectly characterize our reading of the statute. As we have already noted, the statute, by its very terms, makes clear that not all employees are subject

to the licensing requirements. Further, whether an individual is subject to the licensing requirement depends on whether the individual is "engaged in the designated business[ ], occupation[ ], profession[ ] and trade[ ]." Id. § 302 (emphasis added). The issue here, then, is whether the non-owner attorneys are "engaged in" the profession of "[a]ttorney," and it is clear beyond doubt that the non-owner attorneys are "engaged in" in the profession of "[a]ttorney."

As practicing attorneys in the Virgin Islands, the plaintiffs must be active members of the Virgin Islands bar. See V.I. Terr. Ct. R. 305(b). As active members of the Virgin Islands bar, the plaintiffs must be engaged in the practice of law. See id. at 306(a). Therefore, the fact that the plaintiffs are practicing attorneys leads ineluctably to the conclusion that they are engaged in being attorneys. See Mayor & Council of Wilmington v. Dukes, 157 A.2d 789, 793 (De. 1960) (classifying employee physicians as carrying out the medical profession); Brinton v. City of Jonesboro, 320 S.W.2d 272, 273 (Ark. 1959) (classifying employee attorneys as carrying out the legal profession).4  This conclusion is not

_____

anyone, the plaintiffs reason that non-owner attorneys must not be subject to the licensing requirements. This argument is also flawed. First, by its very terms, § 303b(a) only applies to entities; it does not apply to individual persons. Second, the argument similarly proves too much. By the reasoning of the plaintiffs, § 303b(a) would exempt numerous businesses, occupations, professions, and trades listed in § 302 from the licensing requirements. Just because these businesses, occupations, professions, or trades -- by their very nature -- will not be hiring any employees does not mean that § 303b(a) exempts them from the licensing requirements. If § 303b(a) did work such exemptions, then these businesses, occupations, professions, and trades would be read out of § 302.

4. The plaintiffs point to language in § 306, the exemption for government attorneys, see supra note 1, for further support of their

14

affected by the fact that the attorneys at issue in this case are non-owner attorneys in a law firm.5  Further, that non-owner attorneys at law firms may be "engaged in" the profession of "[a]ttorney" does not determine whether other employees, in other fields, are "engaged in" a listed business, occupation, profession, or trade.6

In sum, the plain language of the statute renders it applicable to non-owner attorneys employed by law firms.7

_____

position. They note that the section will not apply if the exempted individual is "engaged in the conduct of business pursuits for profit." V.I. Code Ann. tit. 27, § 306 (1997). According to the plaintiffs, such language implies that the licensing scheme applies only to the business entity and not to employees, because it is the business entity that is seeking the profits. We believe such language implies exactly the opposite. If the licensing scheme applied only to business entities and not to employees, there would be no need for the exemption in the first place; government attorneys are mere employees.

5. We caution that our holding extends only to those non-owner attorneys of law firms who work in the Virgin Islands and have been admitted to the Virgin Islands bar to practice before the local courts by the regular admission rules. Our holding does not address those attorneys who have been admitted to the Virgin Islands bar pro hac vice or by the special admission rules, who do not ordinarily work in the Virgin Islands, or who have been admitted in the Virgin Islands only to practice before the District Court of the Virgin Islands. We do not reach the question whether such attorneys are "engaged in" being attorneys in the Virgin Islands.

6. The kernel of Judge Weis' argument is that, while the statute, particularly § 302(b), seemingly covers virtually everyone in the work force, the (inconsistent) administration of the statute negates that view, and counsels that employees are simply not covered. As we have noted above, see supra, note 2, the matter of selective enforcement is not before us. We do note, however, that Judge Weis reads too much into the catch-all provision. As we understand the reference to "[a]ny person or association engaged in a business, occupation, profession, or trade" not listed or not covered by any other provision of this Code, who is to obtain an annual license at a fee of $100, it deals with a new occupation that did not previously exist (e.g. "Internet Counsultant"), or an occupation not at all mentioned in § 302(a), either on its own, or as part of an entity.

7. Our conclusion about the plain language of the statute effectively disposes of the argument, advanced by the Commissioner, that we must

15

C. Separation of Powers

The plaintiffs contend that applying the licensing requirements to them would violate the principle of separation of powers. They argue that the judicial branch of the Virgin Islands enjoys exclusive control over the regulation of the practice of law in the Virgin Islands. Because the licensing scheme is itself a form of regulatory control, the plaintiffs continue, imposing that scheme on attorneys would allow executive agencies to regulate attorneys and thereby to encroach on the judiciary's domain. Of particular concern to the plaintiffs are those provisions of the licensing statute that allow executive agencies to deny a license to or revoke a license from those whose moral character or misconduct renders them unfit to engage in business in the Virgin Islands, see V.I. Code Ann., tit. 27 § 304(a)(2) (1997), or those who allow improper or wrongful behavior on their business premises, see id. § 304(a)(3). The plaintiffs also profess concern about those provisions that allow the executive agencies to enjoin a person from engaging in business without a license. See id. §§ 307(c), 307a(b). The plaintiffs' concerns (and their claims) must, however, be deemed tempered by the Commissioner's

_____

give deference to the interpretation given the statute by the agencies charged with enforcing it. This argument is drawn from Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). Assuming without so holding that the principles of Chevron apply to the relationship of the executive agencies and the courts in the Virgin Islands, the well-known two-part test enunciated in Chevron would dictate that our inquiry here begins and ends with the first part of the test, whether the statute is ambiguous. Because the statute here is clear, there is no need to move to the second part of the test, whether the agency has permissibly construed the statute. Similarly, our conclusion about the plain language effectively disposes of the argument, advanced by the plaintiffs, that ambiguous statutory language dealing with licensing schemes is to be interpreted against the government. Assuming without so holding that this is a correct proposition of law, that proposition would have no place in this case because, as we have discussed, the language of the statute is not ambiguous.

Finally, the plaintiffs contend that our reading of the licensing statute would render the licensing scheme in violation of the Equal Protection Clause. We have considered that contention and find it utterly baseless. We therefore reject it summarily.

16

explicit disclaimer, in this court, of authority to interfere with the court's control over lawyers: "At no time has the [Commissioner] disagreed with the power of the court to regulate the professional conduct of attorneys." Appellant's Reply Brief at 4. Moreover, the Commissioner acknowledges that "the court licenses to regulate professional conduct and competence." Id. There is no action before the court -- or apparently even contemplated by the Commissioner -- to disbar a delinquent attorney or to regulate his professional practice, judgment, or activity. Thus the potentional infringement is more modest than was originally supposed. The plaintiffs have nonetheless mounted a separation of powers-based challenge to the statute even insofar as it requires licensure, and hence we must address the issue.8

At the threshold, we hold that the doctrine of separation of powers applies with respect to the coordinate branches of government in the Virgin Islands. The Organic Act of the Virgin Islands created three branches of government in the Virgin Islands. See 48 U.S.C. § 1571 (legislative branch); id. § 1591 (executive branch); id. § 1611 (judicial branch). Congress therefore implicitly incorporated the principle of separation of powers into the law of the territory. See Springer v. Government of the Philippine Islands, 277 U.S. 189, 199-202 (1928).

In Springer, the Supreme Court examined the structure of government in the Philippines, then a territory of the United States. The Court noted that Congress, in enacting the Philippine Organic Act, created three branches of government. See id. at 201. In so doing, the Court continued, Congress incorporated the principle of separation of powers into Philippine law. It stated that "as a general rule inherent in the American constitutional system . . . unless otherwise expressly provided or incidental to the powers conferred, the Legislature cannot exercise either executive or judicial power; the executive cannot exercise either legislative or judicial power; the

_____

8. See Appellees Brief at 15 et seq.

17

judiciary cannot exercise either executive or legislative power." Id. at 201-02.9

Because the issue before us is whether the licensing scheme infringes on judicial power, we must first discuss the scope of the relevant judicial power. The Organic Act, as amended in 1984, provides that "[t]he rules governing the practice and procedure of the courts established by local law and those prescribing the qualifications and duties of the judges and officers thereof . . . shall be governed by local law or the rules promulgated by those courts." 48 U.S.C. § 1611(c) (emphasis added). It is thus clear from the Organic Act itself that local law -- enacted by the Virgin Islands legislature -- may have some role to play in the regulation of attorneys (officers of the court). Put differently, the Organic Act envisions the possibility of the sharing of power over the regulation of attorneys between the Virgin Islands courts and the Virgin Islands legislature, at least to the extent of imposing a license fee. The possibility of that sharing itself disposes of the argument that the application of the licensing scheme to attorneys violates the principle of separation of powers.

The plaintiffs and the appellate division, however, point to provisions of the Virgin Islands Code that, they contend,

---

9. In addition to Springer, we draw support for our conclusion from two other lines of authority. The first is our own jurisprudence. We have often assumed, without squarely holding, that the doctrine of separation of powers applies with respect to the coordinate branches of government in the Virgin Islands. See, e.g., Territorial Ct. of the Virgin Islands v. Richards, 847 F.2d 108, 112 (3d Cir. 1988); Government of the Virgin Islands v. Harrigan, 791 F.2d 34, 37 n.1 (3d Cir. 1986); Dennis v. Luis, 741 F.2d 628, 631-38 (3d Cir. 1984); Block v. Potter, 631 F.2d 233, 239-40 (3d Cir. 1980). The second is the jurisprudence of the District Court of the Virgin Islands and the Territorial Court, which have routinely applied the doctrine of separation of powers. See, e.g., Bryan v. Liburd, CIV. No. 711/96, 1996 WL 785997, at *2 (Terr. Ct. V.I. Dec. 30, 1996); Dawsey v. Government of the Virgin Islands, 931 F. Supp. 397, 401 (D.V.I.), aff 'd, 106 F.3d 384 (3d Cir. 1996), cert. denied 65 U.S.L.W. 3820 (U.S. June 16, 1997) (No. 96-1803); Luis v. Dennis, 576 F. Supp. 733, 734 (D.V.I. 1983), vacated by 751 F.2d 604 (3d Cir. 1984); Municipality of St. Thomas & St. John v. Gordon, 78 F. Supp. 440, 442-44 (D.V.I. 1948).

provide the judiciary with exclusive control over the regulation of attorneys in the Virgin Islands. The first provision is V.I. Code Ann. tit. 4, § 441 (1967 & Supp. 1994). Section 441 grants jurisdiction over the regulation of attorneys in the Virgin Islands to the district court. But, even if § 441 retains any vitality after the passage of 48 U.S.C. § 1611(b) and V.I. Code Ann. tit. 4, § 76(a) (Supp. 1994), see In re Application of Moorhead, 27 V.I. 74, 80-84 (V.I. Terr. Ct. 1992) (holding that § 1611(b) and § 76(a) shift control over the regulation of attorneys in the Virgin Islands from the district court to the Territorial Court), it would not provide support for the contentions of the plaintiffs. Section 441 does not, by its terms or otherwise, vest exclusive control over the regulation of attorneys in the judiciary. Moreover, nothing in Moorhead or § 76(a), to which the plaintiffs also point, alters the possibility of the sharing of power arrangement embodied in § 1611(c).

The plaintiffs also seek support for their argument from the inherent power of courts to control the admission of attorneys to practice before them. Although the inherent power of the courts to regulate attorneys is well established, see, e.g., Ex parte Secombe, 60 U.S. (19 How.) 9, 13 (1857), it is also well established that legislatures have the power to cabin inherent power in courts of their own creation. See Chambers v. NASCO, Inc., 501 U.S. 32, 47 (1991); see also Secombe, 60 U.S. (19 How.) at 13-14. Although not directly on point, Secombe and Chambers provide some instruction. Congress allowed for the creation of local Virgin Islands courts; it can certainly restrict their power. In this case, Congress did so by including in § 1611(c) the possibility of a sharing arrangement.

We have held that the exercise of legislative power in this regard is at least partially circumscribed. In Eash v. Riggins Trucking, Inc., 757 F.2d 557 (3d Cir. 1985) (en banc), we described three categories of inherent powers: (1) irreducible powers derived from Article III over which courts have absolute command; (2) essential powers that Congress may regulate but not abrogate or render practically inoperative; and (3) useful powers that exist only in the absence of legislative directive to the contrary. See id. at 562-64. It cannot seriously be said, however, that the

19

power to regulate attorneys is one of the irreducible powers of a court completely immune from legislative interference. As we explained in Eash, such powers exist in "an extremely narrow range of authority involving activity so fundamental to the essence of an autonomous court as a constitutional tribunal that to divest the court of absolute command within this sphere is really to render practically meaningless the terms `court' and `judicial power.' " Eash, 757 F.2d at 562.

But even assuming that the power to regulate attorneys is essential to the functioning of a court, the interference here is minimal and in no way renders inoperative that power. Congress has not, by § 1611(c), abrogated the power to regulate attorneys; it has merely allowed for the division of that power. At all events, there can be no dispute that attorneys, like other citizens, are subject to criminal and administrative sanctions as well as the usual collection remedies for failure to pay taxes or licensing fees. Enforcement of such obligations does not impair the judiciary's supervision of the Bar. See, e.g., Sterling v. City of Philadelphia, 106 A.2d 793, 796–97 (Pa. 1954).

Our discussion is not inconsistent with the state court cases that have invalidated similar licensing schemes because such schemes infringe on the power of the courts to regulate attorneys. Such cases are grounded on the exclusive control over the regulation of attorneys the particular state had vested in its judiciary. We mention one case as an example. In Harlen v. City of Helena, 676 P.2d 191 (Mont. 1984), the Supreme Court of Montana invalidated a city ordinance requiring a fee of all persons or entities carrying out business in the city. See id. at 192. Vital to the court was the fact that it had exclusive authority, pursuant to the state constitution, to promulgate rules governing attorneys. See id. at 193.

In sum, the principle of separation of powers is not violated by the application of the Virgin Islands licensing scheme to attorneys. The order of the appellate division affirming the order of the Territorial Court issuing a permanent injunction against enforcement of the licensing statute against non-owner attorneys will be reversed.

20

WEIS, Circuit Judge, dissenting.

The Territorial Court and the Appellate Division of the
District Court of the Virgin Islands read the licensing
provisions as a whole and construed them to be generally
directed to business entities, partnerships, and
corporations, rather than to individual employees. I agree
and would affirm.

The statute says in very broad terms that "[e]very person
or association wishing to engage in any business,
occupation, profession, or trade listed in section 302" must
obtain a license. V.I. Code Ann. tit. 27, § 301(a) (1997). In
turn, section 302 lists several hundred occupations,
services, professions, and callings, including such diverse
classifications as itinerant vendors, judo instructors,
machine shops (but not machinists), masonry contractors
(but not masons), master plumbers, modeling agencies (but
not models), pharmacies (but not pharmacists), public
accountants, and attorneys. Section 302 includes
restaurants classified by the number of tables, but does not
list cooks or waiters.

The fees for section 302 licenses range from $10 for a
temporary barber to $2,000 for business management or
consulting firms representing 100 or more foreign service
corporations. As a catchall, section 302(b) provides that
"[a]ny person or association engaged in a business,
occupation, profession, or trade" not listed "or not covered
by any other provision of this Code shall obtain an annual
license at a fee of $100."

Despite the majority's view to the contrary, the statute,
on its face, applies to every person who receives
compensation from an "occupation" as well as to those
individuals who engage in a business, profession, or trade.
The only exemptions are those specified in section 306 for
governmental, religious, charitable, benevolent, and
educational organizations.

Despite the broad language in sections 301 and 302, the
government does not contend that the licensing statute was
intended to cover such an all encompassing swath of the
working population. Indeed, the government disclaims such
an expansive interpretation. The simple language

21

construction adopted by the majority, therefore, has been rejected by the licensing body itself.

From the record, it appears that the government has not enforced the wording of the catchall clause, rather it has pursued a policy of licensing business entities instead of their employees. For example, the Territorial Court observed that, in a prior proceeding, an official of the Consumer Service Administration (entrusted with enforcement of the statute) testified that although travel agents are listed in section 302, they "are not required to be licensed, unless they possess an ownership interest in the business for which they work, because they are not professionals, but merely employees." Smith v. Magras, Civ. No. 167/1993, 1993 WL 566406 at *5 (Terr. Ct. V.I. Dec. 17, 1993).

The statute itself, in sections 301(b) and (c), requires that an application for a license be made on a form furnished by the Commissioner of Licensing and Consumer Affairs. Applicants must provide information about their personal history, experience, business record, and criminal record. In designating who should submit applications, section 301(b) states that "[i]n the case of corporations or partnerships the preceding requirements" apply to "all of the shareholders or partners." In all cases,"such requirements shall be applicable to the actual owners and not merely to the nominal owners." Id.

Significantly, employees of corporations and partnerships are not listed among those who must submit information. Thus, in the case of a corporation, as the statute reads, a shareholder must submit personal data, but the president, who is merely an employee, need not. Similarly, as to partnerships, the statute makes no mention of "employee." Subsection 301(c), however, provides that a corporation or partnership application "shall designate each member, officer, or employee who will exercise the powers to be conferred by the license upon such partnership or corporation." This subsection does not in any way require an employee to apply for a license.

Although the Commissioner now takes the position that all lawyers in private practice must pay the license because

22

it is personal to them, that principle has not been consistently applied. As the district court noted, in the past, the Commissioner had not required an attorney to pay a licensing fee "unless the attorney had an ownership interest in the law partnership or corporation by which she was employed." Magras v. Smith, 940 F. Supp. 124, 129 (D.V.I. 1996).

To adopt the Commissioner's current position that a license is personal would mean that an automobile mechanic who is employed by a repair shop (which must be licensed under section 302(a)) must also obtain a license for his occupation or trade under section 302(b). Similarly, a carpenter employed by a large construction firm would have to obtain an individual license, as would a clerk in a retail establishment. That, however, is not what the Commissioner's practice is, or has been.

The Commissioner's litigation posture in an earlier case in this Court is revealing. Section 306 exempts "agencies of the Virgin Islands or of the United States Government, [ ] religious, charitable, benevolent, or educational associations." Significantly, that section does not mention "employees" of such institutions. However, in Hollar v. Government of the Virgin Islands, 857 F.2d 163, 171 (3d Cir. 1988), the government argued that because they are merely employees of various agencies, government attorneys fall under the blanket exclusion.

Additionally, the Commissioner contended that government attorneys were only employees because their pre-determined salaries did not depend on the attorneys' caseload or success rate. See Smith, 1993 WL 566406 at *4 (discussing the Commissioner's arguments in Hollar). That latter comment, of course, is irrelevant and, in any event, may well be said of an associate attorney employed by a law firm.

To be consistent, the Commissioner's position that an attorney working for a government salary is an employee and, as such, not subject to the tax, should carry over to an employee lawyer of a law firm who similarly should not be obligated to obtain a license. The exemption of employee lawyers is what the government successfully advanced in

23

Hollar and that status should apply to plaintiffs here as well.

The district court's conclusion that the statute should be construed to apply only to partners in law firms or sole practitioners who have a proprietary interest is, I believe, the proper reading. The district court's construction pays due fealty to the canon of construing the statute as a whole, gives due regard to the government's consistent application over the years, and results in a rational interpretation of the legislation. I would affirm.

24

APPENDIX

§ 302 Same; business, occupations, professions and
trades covered; fees

(a) The following annual license fees are made applicable
to and shall be levied upon all persons and associations
engaged in the designated businesses, occupations,
professions and trades in the Virgin Islands of the United
States:

```
Additional place of brokers business              $ 50
Advertising                                         150
Air cargo transportation                            500
Air charter service per plan                        100
Air conditioning and refrigeration repair shop      125
Answering service                                    75
Apartment house A, more than 12 units               250
Apartment house B, 9-12 units                       220
Apartment house C, 5-8 units                        150
Apartment house D, 4 or less units                  100
Appliance repair shop                               100
Appraiser                                           100
Armored car service                                 300
Artist studios                                      100
Astrology service                                   100
Attorney                                            500
Auto cleaning and polishing service                 100
Automobile towing service                           100
Automobile undercoating                             100
Automotive inspection and diagnostic services       100
Automobile mechanical road service                  100
Baby sitting service                                100
Baggage, cargo, mail handling                       225
Bakery                                              200
Barber                                               50
Barber apprentice                                    25
Barber shop initial issuance                        150
Barber shop renewal                                  75
Barber temporary                                     10
Battery and ignition repair                         100
Beach club                                          100
Beautician apprentice                                30
```

```
Beautician temporary                                        10
Beauty school                                              200
Beauty shop initial issuance                               150
Beauty shop renewal                                         75
Billiard table per table                                    30
Blasting service                                           150
Blender, bottler of alcohol beverages                      800
Boat building and repair                                   125
Boat charter service per boat                              100
Boat rental                                                100
Bookkeeping services                                       100
Bowling alley                                              300
Bus transportation per bus                                  50
Business and management consultant                         300
Business courses and related training                      250
Business Management or Consulting Firm for
 Foreign Sales Corporations:
 Firms managing or consulting for less than 5
 Foreign Sale Corporations                                 500
Firms managing or consulting for at least 5 but
 less than 100 Foreign Sales Corporations                1,000
Firms managing or consulting for 100 or
 more Foreign Sales Corporations                         2,000
Butchery                                                   300
Cable car sightseeing tours                                125
Cable splicing and related work                            150
Cable television and antenna service                       150
Car leasing                                                100
Car Rental A-- 0 to 20 vehicles                            200
Car Rental B-- 21 to 50 vehicles                           300
Car Rental C-- more than 50 vehicles                       400
Carpentry contractor                                        75
Carpet laying and related services                         125
Catering service                                           100
Certified public accounting                                300
Charm school                                               100
Check room service                                          50
Claim adjusters                                            150
Clinical laboratory                                        300
Club liquor license                                        200
Cockfighting                                               500
Coffee shop and ice cream parlor                           100
```

```
Coin operated car wash                                     100
Commercial art services                                    100
Commercial boat, freight or passengers                     100
Commercial breeding services                               100
Commercial diver                                           100
Commercial kennel                                          100
Commercial laundry                                         200
Commercial school                                          250
Commercial warehousing                                     150
Commodity exchange clearing house                          300
Common carrier int. telecommunication                      150
Communication equipment inst. contractor                   150
Communication equipment oper. contractor                   150
Concrete pumping                                           250
Construction contractor                                    200
Consultation and related therapy services                 125
Copyright protection service                               100
Cottage rental                                             100
Credit bureau and collection agency                        200
Customs and visa preparations service                      100
Dance studio                                                50
Dealer in explosives Public Safety                         500
Dental laboratory                                          350
Development and sale of own property                        75
Discotheque-- same as night club
Documentation services for vessels steam ship agent        150
Dog grooming shop                                          100
Draftsman                                                   75
Driving school                                             200
Dry cleaning                                               200
Dry docking services                                       200
Drywall-- sheetrock installation contractor                75
Electrical contractor                                      100
Electronic security consultant                             150
Employment agency                                          100
Escort service                                             200
Exterminating and pest control                             150
Fiduciary services                                         100
Fingerprint services                                       100
Firearms and ammunition-- distributor or
 wholesaler                                              1,000
Firearms and ammunition-- retail sales                     550
```

27

```
Firearms and ammunition-- gunsmith                      500
Fire prevention service                                 100
Fireproofing contractor license                         150
Florist                                                 150
Flower conserv. and agricultural nursery                100
Flying school                                           250
Foreign Sales Corporation                               100
Free lance photographer                                 100
Garage and repair shops                                 200
Garbage removal                                         100
Gasoline station                                        250
General aviation service and maintenance                125
General manufacturing-- glass                           150
General manufacturing-- food                            150
General manufacturing-- tobacco                         150
General manufacturing-- textile                         150
General manufacturing-- clothes                         150
General manufacturing-- public printing                 150
General manufacturing-- chemical                        150
General manufacturing-- petroleum                     1,000
General manufacturing-- rubber                        1,000
General manufacturing-- leather                         150
General manufacturing-- metal                           500
General manufacturing-- fabricated metal                500
General manufacturing-- machinery                       500
General manufacturing-- electrical machinery            500
General manufacturing-- transportation equipment        300
General manufacturing-- watches                         350
General manufacturing-- miscellaneous                   300
Glass tinting contractors                                75
Golf course                                             150
Guard dog service                                       100
Hair removal service                                     75
Health club or spa                                      300
Holding company                                         200
Hotel and guest house A-- over 100 beds                 400
Hotel and guest house B-- over 40-99 beds               300
Hotel and guest house C-- 1-39 beds                     200
Hotelkeeper-- liquor                                    200
Hypnotism consultant                                    100
Ice manufacturing                                       250
Importer of goods for resale                            200
```

```
Information and data processing services          100
Installation of equipment                          75
Installation of fences                             75
Installation of fire and burglary alarm systems   200
Interior decorating                               100
Investment advisory service                       200
Investment brokerage                              400
Itinerant vendor license                           50
Janitorial service and supply                     150
Jewelry and watch repair shop                     100
Judo instructor                                   100
Karate instructor                                 100
Kindergarten school                               200
Landscaping consultant                            100
Landscaping, garden, maintenance service          100
Laundromat                                        200
Laundry pickup and delivery service               100
Leasing of plants                                 100
Lie detection service                             100
Liquor wholesalers license                        400
Machine shop                                      100
Manicurist apprentice                              10
Manufacturers of aerated waters                   150
Manicurist                                         75
Marine biological supplies                        100
Marine salvage and Rel undeater service           150
Marine surveyor and blastg service                150
Marine surveyor and conltant                      150
Masonry contractor                                 75
Massage parlor                                    150
Master electricia                                 100
Master plumber                                    100
Media adverting, promotion and production         200
Medical labatory                                  300
Messengernd delivery service                      100
Misc. asement devices                             150
Mobilfood service                                 100
Mobe refreshment stand                             75
Meling agency                                     100
Mortgage banker                                   200
Mortgage broker                                   400
Motion picture distribution                       150
```

| | |
|---|---:|
| Motion picture theater | 500 |
| Motor vehicle dealer | 500 |
| Moving and freight forwarding services | 200 |
| Music recording and sales business | 200 |
| Nickelodeon per machine | 30 |
| Night club license | 700 |
| Nutrition and consulting services | 100 |
| Oceanographic research and development | 100 |
| Out patient care facility | 100 |
| Owners representative coordinator | 100 |
| Painting contractor | 75 |
| Paralegal services | 100 |
| Parking lot vehicle | 100 |
| Pharmacy | 300 |
| Photocopying services | 75 |
| Photographic processing or studio | 50 |
| Piano technician | 100 |
| Pin ball and similar machines per machine | 50 |
| Plastering contractor | 75 |
| Plumbing contractor | 100 |
| Pollution control services | 100 |
| Poultry farm-- agriculture | |
| Prime distillers of alcoholic beverages | 1,500 |
| Printing and publishing house | 250 |
| Private elementary/secondary school | 200 |
| Production of milk and milk products | 125 |
| Project coordinator/consultant | 75 |
| Public accountant | 120 |
| Public auctioneer | 100 |
| Public dance license | 25 |
| Public relations services | 100 |
| Public title reporter | 100 |
| Radio and television repair shop | 100 |
| Radio advertising, promotion and production | 200 |
| Radio station | 500 |
| Real estate broker | 250 |
| Real estate salesman | 200 |
| Real estate salesman-- temporary | 100 |
| Real estate-- change business place | 50 |
| Real estate-- change of associate | 50 |
| Red cap porter service | 50 |
| Rent of real property (other than buildings) | 100 |

```
Rental of equipment                                     100
Rental of non-residential building                      150
Rental watersports equipment                            100
Repair and maintenance of misc. items                   100
Restaurant A-- Seating capacity 25 or more              200
Restaurant B-- Seating capacity less than 25            125
Retail shop and store-- except liquor                   100
Retailers liquor license                                250
Riding academy                                           75
Rooming house                                           100
Rug and furniture cleaning on location                  100
Sailing school                                          200
Sale of prepaid hotel reservation                       125
Sales and marketing concepts                             50
Sales finance                                           200
Salvage and sale of used parts                          100
Scheduled air service                                   700
School of ceramics                                      100
School of language                                      100
School of music                                         100
School of philosophy                                    100
School of underwater photography                        100
Scooter and/or motorcycle rental                        150
Scrap metal collection and sales                        100
Scrap paper collection and sales                        100
Scrap plastic collection and sales                      100
Scuba diving school and related services                125
Secretarial service                                     100
Security analyzing service                              100
Septic tank cleaning                                    150
Sewer cleaning and rodding services                     150
Sewerage maintenance and operational engineering
 services                                               150
Sewing school                                           100
Sheet metal and iron work shop                          150
Ship chandler                                           100
Shoe repair shop                                         75
Sightseeing and tour operations                         100
Sign painting                                            75
Silk screen manufacturing                               150
Skating rink                                            175
```

```
Solicitor, sales and commission agent                75
Sporting and recreational camp                      100
Sports instructor                                   100
Sports promoter                                     150
Sprinkle system installation contractor              75
Steamship and shipping agents                       150
Stevedoring license                                 100
Summer school                                       100
Swimming instruction                                100
Swimming pool installation contractor               150
Tailoring and alteration service                    100
Tavernkeeper A-- distilled and fermented spirits    250
Tavernkeeper B-- fermented spirits only             150
Tax consultant                                      100
Telegraph office                                    350
Television station                                  600
Temporary help contracting agency                   100
Tennis club                                         100
Theatrical production, except motion picture        100
Theatrical promoter and booking agent               150
Theatrical variety employment service               150
Tile setting contractor                              75
Tire recapping and retreading service               100
Tobacco Retailer                                    100
Tobacco Wholesaler                                  500
Transient disco service                              75
Transient amusement operator                        500
Translation services                               100
Travel and ticket agent                             150
Tree surgery                                        100
Trucking, transportation and delivery               100
Typewriter repair shop                              100
Undertaking business                                500
Upholstery shop                                     100
Used car lot                                        100
Vehicle inspection service                          100
Vending machine A--
 License-- 0 through 5 machines                     100
Vending machine B--
 License-- 6 through 20 machines                    150
Vending machine C--
 License-- 21 through 50 machines                   200
```

```
Vending machine D--
 License-- more than 50 machines                 400
Vocational training school                       100
Water skiing school                              100
Water supply services                            150
Waterproofing contractor                          75
Welding services                                 100
Wholesaler and other than liquor                 250
Writing school                                   100
Yacht brokerage service                          100
```

(b) Any person or association engaged in a business, occupation, profession, or trade not designated in subsection (a) of this section or not covered by any other provision of this Code shall obtain an annual license at a fee of $100.

. . . .

A True Copy:
Teste:

<u>Clerk of the United States Court of Appeals</u>
<u>for the Third Circuit</u>

33